Brenda SHANDS, Plaintiff-Respondent-Petitioner,

v.

Joseph CASTROVINCI, d/b/a Central City Housing, Defendant-Appellant.

Supreme Court

*No. 82–730. Submitted on briefs October 31, 1983.—Decided November 30, 1983.*

(Also reported in 340 N.W.2d 506.)

For the plaintiff-respondent-petitioner the cause was submitted on the brief of *James A. Gramling, Jr., Louis J. Mestre* and Legal Action of Wisconsin, Inc., Milwaukee.

For the defendant-appellant the cause was submitted on the brief of *Joseph Castrovinci.*

Amicus curiae brief was filed by *Mark E. Smith,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general, for the Wisconsin Department of Justice.

WILLIAM G. CALLOW, J. This is a review of an order of the court of appeals denying the petitioner's motion for reasonable attorney fees pursuant to sec. 100.20(5), Stats. We reverse the order of the court of appeals.

The issues presented on this appeal are whether sec. 100.20(5), Stats., requires an award of reasonable attorney fees for an appeal in an action for violation of Wis. Adm. Code sec. Ag 134.06; and, if such attorney fees are recoverable, whether a tax supported legal services organization is entitled to receive attorney fees even though the client is not responsible for paying a legal fee.

On February 13, 1981, Brenda Shands filed a small claims action in Milwaukee county circuit court to recover a security deposit of $145 from her former landlord, Joseph Castrovinci, d/b/a Central City Housing. Shands alleged that her landlord had failed within twenty-one days of Shands' vacating her rental unit either to refund her security deposit or to deliver to her a written statement of the claims made against her deposit, as required by Wis. Adm. Code sec. Ag 134.06(2)

and (4).[1] Shands sought double her pecuniary loss, together with the costs of the action, including reasonable attorney fees as authorized by sec. 100.20(5), Stats.[2] Castrovinci counterclaimed in the sum of $352 for one month's rent and alleged damage to the rental unit.

The action was tried before the court, Judge John E. McCormick, on April 27, 1981. On February 16, 1982, the court issued a memorandum decision in which it found that Castrovinci had improperly withheld Shands' security deposit and awarded her $290 as damages. The court did not award any amount to Castrovinci on his counterclaim. Shands then made a motion for an award of costs and reasonable attorney fees. After an evidentiary hearing conducted on March 15, 1982, the court on March 26, 1982, entered an order awarding Shands $290 in damages, $287.50 for attorney fees, and costs.

---

[1] Wis. Adm. Code sec. Ag 134.06(2) and (4) provides:

"(2) *Return of Security Deposits.* The landlord shall, within 21 days after surrender of the premises, return all security deposits less any amounts withheld by the landlord. Deposits shall be returned in person, or by mail to the last known address of the tenant.

". . . .

"(4) *Security Deposit Withholding; Statement of Claims.* (a) If any portion of a security deposit is withheld by a landlord, the landlord shall, within the time period and in the manner specified under sub. (2), deliver or mail to the tenant a written statement accounting for all amounts withheld. The statement shall describe each item of physical damages or other claim made against the security deposit, and the amount withheld as reasonable compensation for each item or claim."

[2] Sec. 100.20(5), Stats., provides: "Any person suffering pecuniary loss because of a violation by any other person of any order issued under this section may sue for damages therefor in any court of competent jurisdiction and shall recover twice the amount of such pecuniary loss, together with costs, including a reasonable attorney's fee."

Castrovinci appealed the trial court's order to the court of appeals. On November 10, 1982, the court of appeals issued a decision affirming the trial court's order because the court's findings were not against the great weight and clear preponderance of the evidence. On November 24, 1982, Shands filed a motion, pursuant to sec. 100.20(5), Stats., with the court of appeals for costs and the sum of $650 as reasonable attorney fees incurred defending the trial court's order on appeal. On December 23, 1982, the court of appeals summarily denied the motion for attorney fees. Shands petitioned this court for review of the court of appeals' order, and we granted the petition[3] on March 8, 1983. At all times during this action Shands has been represented by Legal Action of Wisconsin, Inc. (LAW), a public interest legal services organization.

In interpreting statutes we apply the oft-repeated guiding principles that "[t]he aim of all statutory construction is to discern the intent of the legislature," *Green Bay Packaging, Inc. v. ILHR Dept.,* 72 Wis. 2d 26, 35, 240 N.W.2d 422 (1976), and that a "cardinal rule in interpreting statutes" is to favor a construction which will fulfill the purpose of the statute over a construction which defeats the manifest object of the act. *Student Asso., University of Wisconsin-Milwaukee v. Baum,* 74 Wis. 2d 283, 294–95, 246 N.W.2d 622 (1976). Where one of several interpretations of a statute is possible, the court must ascertain the legislative intention from the language of the statute in relation to its context, subject matter, scope, history, and object intended to be accomplished. *State ex rel. First National Bank & Trust Co. of Racine v. Skow,* 91 Wis. 2d 773, 779, 284 N.W.2d 74 (1979).

---

[3] Castrovinci petitioned this court to review the court of appeals' decision affirming the trial court's order, but we denied the petition because it was not timely filed pursuant to sec. 808.10, Stats.

Sec. 100.20(1), Stats., declares: "Methods of competition in business and trade practices in business shall be fair. Unfair methods of competition in business and unfair trade practices in business are hereby prohibited." Under the statute the Wisconsin Department of Agriculture, Trade and Consumer Protection is authorized to "issue general orders forbidding . . . trade practices . . . which are determined by the department to be unfair." Sec. 100.20(2), Stats. Pursuant to this authority, the department promulgated administrative rules governing the rights and duties of landlords and tenants in residential housing. *See* Wis. Adm. Code Ch. Ag 134. Sec. 100.20(5), Stats., gives any person who suffers damages because of a violation of the administrative regulations, including Ch. 134, a right to recover twice the amount of pecuniary loss, together with costs, including a reasonable attorney fee.

We note at the outset that generally, except for court costs and fees, a plaintiff may not recover attorney fees and expenses of litigation in his or her claim against the defendant unless such liability arises from specific statutory provisions or the contract of the parties. *Cedarburg Light & Water Comm. v. Glens Falls Ins. Co.,* 42 Wis. 2d 120, 124–25, 166 N.W.2d 165 (1969). In this type of case, however, the use of the word "shall" in the relevant statutory provision indicates attorney fees awards for prevailing tenants are mandatory. *In Matter of E.B.,* 111 Wis. 2d 175, 185, 330 N.W.2d 584 (1983). Section 100.20(5), Stats., on its face contains no instruction regarding at what stage of the litigation process reasonable attorney fees shall be awarded. Certainly, it contains no restrictions.

In order to decide whether the statute requires an award of attorney fees for appeals, we must determine

whether such awards would be commensurate with the purposes of the statute and, more generally, with public policy. We discern several purposes and policy interests behind the provisions of sec. 100.20 (5), Stats. First, the recovery of double damages and attorney fees encourages injured tenants to bring legal actions to enforce their rights under the administrative regulations. Often the amount of pecuniary loss is small compared with the cost of litigation. Thus, it was necessary to make the recovery large enough to give tenants an incentive to bring suit. The award of attorney fees encourages attorneys to pursue tenants' claims where the anticipated monetary recovery would not justify the expense of legal action. While attorneys generally are willing to perform pro bono legal services in appropriate cases, we recognize that practical considerations limit the number of such suits.

Second, the tenant who sues under the statute acts as a "private attorney general" to enforce the tenants' rights set forth in the administrative regulations. Thus, the individual tenant not only enforces his or her individual rights, but the aggregate effect of individual suits enforces the public's rights.

Third, tenant suits have the effect of deterring impermissible conduct by landlords because, if they violate the administrative regulations, they will be subject to double damages and will be responsible for costs, including attorney fees. The deterrent effect of the statute strengthens the bargaining power of tenants in dealing with landlords.

Finally, in an amicus brief the Wisconsin Department of Justice noted that private tenants actions provide a necessary backup to the state's enforcement powers under sec. 100.20, Stats. The department pointed out that the sheer number of violations prevent it from proceeding against all violators. Private tenant actions thus

constitute an enforcement mechanism reinforcing that of the justice department.

A tenant action brought under sec. 100.20(5), Stats., is not successful until he or she has actually recovered damages and attorney fees. The trial court's decision may have to be defended, or an adverse decision protested, in an appellate forum. The same purposes and policy interests we identified for the original action attach to the appeals process. To permit the recovery of attorney fees for successful appellate work is simply to recognize that an attorney's effort at that stage is as essential to the tenant's success as is an attorney's work at the trial court level. Furthermore, we recognize that, if attorney fees were not recoverable on appeal, landlords could defeat the statutory purposes by the simple expedient of an appeal, which will be prohibitively expensive for many tenants; similarly, tenants would have little incentive to pursue a meritorious claim on appeal where they had not prevailed at the trial court level. In short, to deny attorney fees to tenants who need to pursue appellate review to enforce their rights would undercut the salutary objectives of the statute.

In light of these important interests, we find no reason to interpret sec. 100.20(5), Stats., as limiting the award of attorney fees to the original trial court litigation. Accordingly, we hold that a tenant who has suffered pecuniary loss because of a violation of Wis. Adm. Code Ch. Ag 134 shall recover reasonable attorney fees for appellate review undertaken to attack or defend a trial court's decision in the suit.

The next issue is whether sec. 100.20(5), Stats., limits the entity to which attorney fees may be awarded. Specifically, the question arises in this case whether LAW, a legal services organization which is funded through the Legal Services Corporation pursuant to 42

U.S.C. sec. 2996, et seq. (1976), is entitled to recover attorney fees.[4] LAW has been established to provide legal services to those persons who cannot afford to pay for private legal counsel. The legal services provided by LAW are free to eligible clients, but clients are responsible for litigation costs. LAW regularly applies for statutorily recognized attorney fees when it pursues legal actions on behalf of its clients. The fees are retained by LAW and are applied to support its legal services operations in Wisconsin.

The same statutory purposes and policy interests identified earlier support an interpretation of the statute which would permit LAW to recover reasonable attorney fees. By bringing actions on behalf of indigent clients, LAW advances the objectives of the statute by litigating individual claims, by enforcing the more general public policy objective of protecting tenants' rights, and by encouraging landlords to comply with their statutory duties. In advancing these objectives, LAW is no different from the private attorney litigating like claims. Similarly, LAW has finite financial resources and, like the private bar, cannot absorb the costs of litigation itself without limiting the number of cases it can pursue. We agree with the following analysis:

". . . When free legal services are provided there may be no direct barrier to the courtroom door, but if no fees are awarded, the burden of the costs is placed on the organization providing the services, and it correspondingly may decline to bring such suits and decide to

[4] In our order of March 8, 1983, granting Shands' petition for review, we asked that the briefs describe the status of Legal Action of Wisconsin, Inc., (LAW) as a tax-financed entity. In its brief, LAW provided a general description of its legal services activities as they relate to the provision of legal services to indigent clients. We have drawn on this description for purposes of this opinion, even though this information is not part of the record.

concentrate its limited resources elsewhere, thereby curtailing the forceful application of the [statute] . . . . Thus, the denial of fees in this situation indirectly cripples the enforcement scheme designed by [the legislature]."

*Hairston v. R & R Apartments*, 510 F.2d 1090, 1092 (7th Cir. 1975) [award of appellate attorney fees pursuant to the Fair Housing Act under 42 U.S.C. sec. 3612(c) (1976)]; *see also Rodriguez v. Taylor*, 569 F.2d 1231, 1245 (3d Cir. 1977).

We conclude that inherent in the meaning of this statute is the concept that attorney fees should be awarded for all services rendered for the benefit of one who proceeds under the provisions of the statute. We find no limitation in the statute on who shall receive the attorney fees award. Accordingly, we hold that tenants are entitled to an attorney fees award even when they are represented at no charge by a legal services organization. We caution, however, that the attorney fees award is the property of the organization providing the legal services.

In its brief LAW identified a secondary issue; namely, should legal services lawyers be compensated at the same rate as the private bar? Several courts have held that the rate of compensation should be the same for legal services organizations and the private bar.[5] We see no reason to apply a different rule in this case. We

[5] *See, e.g., Fairley v. Patterson*, 493 F.2d 598, 606 (5th Cir. 1974) ("allowable fees and expenses may not be reduced because appellants' attorney was employed or funded by a civil rights organization and/or tax exempt foundation or because the attorney does not exact a fee"); *Schmidt v. Schubert*, 433 F. Supp. 1115 (E.D. Wis. 1977); *Ross v. Saltmarsh*, 521 F. Supp. 753, 766–67 (S.D. N.Y. 1981); *Custom v. Quern*, 482 F. Supp. 1000, 1002–04 (N.D. Ill. 1980).

have equated legal services representation, both in terms of actual practice and the objectives advanced by such representation, with that of the private bar. The value of the services and the benefits accruing to the client and to society by enforcing claims under sec. 100.20 (5), Stats., are identical for either type of representation. It stands to reason that the rate of compensation should match the type of services provided, whether the attorney is in private practice or works for a legal services organization. We conclude that legal services attorneys should be compensated at the same rate as similarly situated private attorneys engaging in the same type of representation.

Because the court of appeals summarily denied Shands' motion for attorney fees, it did not reach the issue of what amount should be awarded. Consequently, we reverse the court of appeals' order and remand the case to the trial court, with directions that the court determine a reasonable attorneys fee award for the appeal to the court of appeals and review in this court.

*By the Court.*—The order of the court of appeals is reversed, and cause remanded for further proceedings consistent with this opinion.

STEINMETZ, J. (concurring). The attorney fees awarded plaintiff's attorneys, Legal Action of Wisconsin, Inc. (LAW), are a matter of financial consequence between LAW and its budget provider or providers. It cannot be said that taxpayers pay the support of LAW for the services it provides for persons unable to afford an attorney and that now the defendant, a taxpayer, pays LAW again as a result of this decision. The defendant in this case is truly a taxpayer in both circumstances, but here he is ordered to pay attorney fees to LAW as a law violator, since he was found by the trial court to have improperly withheld plaintiff's security

deposit contrary to Wis. Adm. Code sec. Ag 134.06(2) and (4). It is for that violation that the attorney fees were awarded.