Tammy KOLUPAR, Plaintiff-Appellant,†

v.

WILDE PONTIAC CADILLAC, INC. and Randall Thompson, Defendants-Respondents.

Court of Appeals

*No. 02–1915. Submitted on briefs May 6, 2003.—
Decided July 22, 2003.*

2003 WI App 175

(Also reported in 668 N.W.2d 798.)

† Petition to review granted 10-21-03.

661

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Paul M. Erspamer* of *Lisko & Erspamer, S.C.*, of Waukesha.

On behalf of defendant-respondent Wilde Pontiac Cadillac, Inc., the cause was submitted on the brief of *Brian M. Brejcha* and *Kathryn Sawyer Gutenkunst* of *Cramer, Multhauf & Hammes, LLP*, of Waukesha.

Before Wedemeyer, P.J., Fine and Curley, JJ.

¶ 1. CURLEY, J. Tammy Kolupar appeals from the order and judgment awarding her $15,000 in attorney fees and costs, rather than the $53,000 in fees and costs requested, in her action against Wilde Pontiac, Cadillac, Inc. (Wilde) and its employee Randall Thompson, alleging that Thompson fraudulently sold Kolupar

a substandard vehicle. Kolupar contends that the trial court: (1) erroneously exercised its discretion in failing to admit into evidence an invoice itemizing Kolupar's attorney's fees and litigation expenses; (2) erred in relying upon the recommendation of the discovery referee; (3) failed to apply the correct legal standard in refusing to award $53,000 in fees and costs; and (4) erred in denying taxable costs. We disagree with Kolupar and affirm.

## I. BACKGROUND.

¶ 2. On March 30, 1994, Kolupar traded in her used 1993 Pontiac Sunbird for a 1985 Mercedes Benz 190E at Wilde. Nine months earlier, Kolupar had purchased the Sunbird from Wilde upon her graduation from high school. On March 30, 1994, Kolupar still owed $10,300 on a loan for the Sunbird. Wilde offered Kolupar $8,995 for the Sunbird, and she paid off the balance of her debt for the Sunbird in cash. Kolupar then financed $8,600, the purchase price of the Mercedes, with another loan from a local lender. Thompson was her salesperson for all transactions.

¶ 3. Kolupar later discovered that the Mercedes had not been owned by Wilde, but by Thompson personally. Although the Mercedes was on Wilde's lot, Thompson had purchased the vehicle from Wilde approximately six months earlier for a little over $5,700. Wilde had no policy prohibiting its sales representatives from selling their personally-owned vehicles on its lot.

¶ 4. After purchasing the Mercedes, Kolupar soon found that the vehicle had a number of mechanical problems, including starting and stalling problems. She also discovered that the odometer operated only intermittently, resulting in an inaccurate mileage display.

663

Kolupar finally sold the Mercedes late in the summer of 1994 for $2,000. On March 29, 2000, Kolupar sued Wilde and Thompson alleging fraud, violations of federal and state odometer laws, breach of express and implied warranties, and violations of Wisconsin's motor vehicle statute, Wis. Stat. § 218.01 (1993–94). A special discovery referee was appointed by the trial court to oversee any discovery disputes if they should arise. Eventually, the parties were able to reach an agreement and settle the case. On December 13, 2001, Kolupar accepted $6,600 plus taxable costs to settle her substantive claims against Wilde and Thompson.

¶ 5. Unfortunately, between the time of the filing of the complaint and entry of the final judgment, this case ballooned into a morass of discovery disputes, ineffective communication, and general inefficiency. Throughout these discovery disputes, Kolupar's attorney's fees continued to swell, eventually amounting to nearly $53,000 in attorney fees and costs, and, after the settlement had been reached, she and her counsel requested that the defendants reimburse these fees and costs pursuant to Wis. Stat. § 218.01(9)(b) (1993–94).[1]

¶ 6. The trial court was left with the daunting task of untangling the messy record in order to determine the amount of reasonable attorney fees and costs to which Kolupar and her counsel were entitled. A hearing was scheduled to determine Kolupar's attorney's fees. It was set for May 13, 2002, and May 14,

---

[1] Wisconsin Stat. § 218.01(9)(b) (1993–94) states, in relevant part: "Any retail buyer suffering pecuniary loss . . . may recover damages for the loss in any court of competent jurisdiction together with costs, including reasonable attorney fees." Wisconsin Stat. § 218.01(9)(b) has been renumbered as Wis. Stat. § 218.0163(2) (2001–02).

2002. At the outset of the hearing, Kolupar offered into evidence an invoice itemizing her attorney's fees and litigation expenses. The trial court refused to accept this document into evidence because it concluded that its submission did not comply with Milwaukee County Local Rule 365(a), which states:

> If a movant desires to file a brief, affidavit, or other documents in support of a motion other than one for summary judgment or dismissal, such motion and supporting materials shall be received by all counsel of record and/or parties not represented by counsel of record and filed with the deputy court clerk of the assigned judge no later than ten (10) calendar days (including Saturdays, Sundays and holidays) before the time specified for the hearing.

The trial court refused to accept the invoice into evidence because opposing counsel had not received a copy of the document until Friday, May 10, 2002, for the hearing being held on Monday, May 13, 2002. Although the trial court would not accept the invoice into evidence, it did not dispute the amount of time that Kolupar's attorney spent on her case. During the hearing on May 13, 2002, the trial court acknowledged: "I want to make it [ ] perfectly clear [that] I am absolutely certain that counsel put in exactly the amount of time on this case that he says. That is not in doubt . . . . I am satisfied counsel put in every second that he said he put in on this case."

¶ 7. At the conclusion of the attorney fees hearing, the trial court awarded Kolupar $15,000 in fees and costs. In rendering its decision, the trial court relied, in part, on the recommendation of the discovery referee. The discovery referee, Frank T. Crivello, a former circuit court judge, gave the following testimony:

[THE COURT]: You are appointed . . . to serve as special master and corral some of the discovery issues here.

[THE WITNESS]: Yes, your Honor.

[THE COURT]: And you are aware of what the plaintiff is asking for attorney's fees?

[THE WITNESS]: My understanding is that it is $53,000.00

[THE COURT]: Can you give me some of your observations, please?

[THE WITNESS]: Judge, I conducted three formal discovery hearings in this case . . . . Between those hearings I also dealt with a flurry of correspondence and telephone calls from counsel regarding the wording of orders following those hearings.

. . . .

In thirty years in [the] practice of law, as well as fifteen years as a circuit judge myself[,] I have never seen a $6,000.00 case grow barnacles the way this one has.

. . . .

I have served as special master in cases on numerous occasions here in Milwaukee County since leaving the bench. The only case that I have seen that approached this magnitude was . . . a multi-million dollar insurance case with fifteen defendants, including one British defendant. So without . . . going through every page of the several thousand pages I have in my possession, I recall three or four instances where I sanctioned [Kolupar's attorney] myself by barring the presentation of testimony, or documents, or witnesses.

. . . .

Having examined the case in terms of discovery and evidence over the course of three hearings and months of correspondence, I think that the discovery and evidentiary issues in this case were grossly inflated. This was a two-person transaction for an automobile . . . .

. . . .

. . . So I would . . . adopt the offer in judgment and award the plaintiff the $6,600.00, which apparently she has accepted, and I would award $15,000.00 from the defendant to the plaintiff in fees. And that is how I would dispose of this case if I were asked to.

I am troubled – and I don't mean to be offensive to these lawyers, who[m] I have a great deal of professional respect for . . . . And I don't think this case is worth much more than [$]15,000 in fees. Although I know both sides spent a lot more time than that.

When lawyers decide to do that, then they bear the onus of that decision.

In rendering its decision, the trial court stated:

Like [counsel] said, this matter was over-tried. The long and short of it, it comes down to – I appreciate [the discovery referee's] recommendation. I think it's appropriate. I happen to concur with it.

In my discretion I believe that there is entitlement for reasonable attorney's fees on behalf of the plaintiff. Reasonable attorney's fees in my mind of $15,000 . . . .

On June 3, 2002, Kolupar filed a motion for reconsideration, which was later denied by the trial court.

## II. ANALYSIS.

*A. The trial court correctly excluded the invoice.*

¶ 8. "The admissibility of evidence is directed to the sound discretion of the trial court, and we will not reverse the trial court's decision . . . if there is a reasonable basis for the decision and it was made in accordance with accepted legal standards and in accordance with the facts of record." *State v. Brewer*, 195 Wis. 2d 295, 305, 536 N.W.2d 406 (Ct. App. 1995) (citation omitted). Milwaukee County Local Rule 365(a) clearly requires that any papers in support of the moving party's position must be filed at least ten days before the scheduled motion hearing. This rule is "valid and enforceable." *Community Newspapers, Inc. v. City of West Allis*, 158 Wis. 2d 28, 33, 461 N.W.2d 785 (Ct. App. 1990) ("We conclude that Local Rule 365 reasonably furthers the courts' interest in efficient judicial administration and is, therefore, valid and enforceable.").

¶ 9. Kolupar contends that Local Rule 365 applies only to motion hearings, and because the proceedings in question were the result of the request for attorney fees rather than in furtherance of any motion, Local Rule 365 is inapplicable. Kolupar first requested attorney fees in her complaint; however, she scheduled a hearing seeking a determination of attorney fees on May 10, 2002, over two years after filing the initial complaint. The petition for a hearing was accompanied by a written request, stating:

> **PLEASE TAKE NOTICE** that the plaintiff named above, Tammy Kolupar, will, on the 13th day of May, 2002 at 10:00 a.m. (the date and time set by the Court for consideration of this issue) request an award to her,

as the prevailing party, of her attorney's fees and the litigation expenses necessitated by the prosecution of this action, at a hearing to be conducted before the Honorable Thomas R. Cooper, Circuit Court Judge, presiding.

¶ 10. A "motion" has been defined as an "application for an order." *State ex rel. Webster Mfg. Co. v. Reid*, 177 Wis. 612, 616, 188 N.W. 67 (1922). Thus, we conclude that the trial court properly applied Local Rule 365 because Kolupar's May 10, 2002 petition for attorney fees was a motion seeking a court order requiring Wilde to pay her attorney's fees. Thus, no error occurred in refusing to consider the invoice. Furthermore, the implicit rationale of the local rule supports the trial court's decision. The rule attempts to insure that the parties are completely prepared to argue their positions prior to the hearing and guards against the possibility that one side will be "ambushed" by new material.

¶ 11. Moreover, we also conclude that any potential error in refusing to admit the invoice into evidence was harmless. "An erroneous exercise of discretion in admitting or excluding evidence does not necessarily lead to a new trial." *Martindale v. Ripp*, 2001 WI 113, ¶ 30, 246 Wis. 2d 67, 629 N.W.2d 698. WISCONSIN STAT. § 805.18(2) (2001–02) provides:

**805.18 Mistakes and omissions; harmless error.**

 . . . .

 **(2)** No judgment shall be reversed or set aside or new trial granted in any action or proceeding on the ground of selection or misdirection of the jury, or the improper admission of evidence, or for error as to any

matter of pleading or procedure, unless in the opinion of the court to which the application is made, after an examination of the entire action or proceeding, it shall appear that the error complained of has affected the substantial rights of the party seeking to reverse or set aside the judgment, or to secure a new trial.

WISCONSIN STAT. § 901.03 (2001–02) also provides:

**901.03 Rulings on evidence. (1)** EFFECT OF ERRONEOUS RULING. Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected.

Here, the trial court, as well as the discovery referee, never disputed Kolupar's counsel's claim that he worked sufficient hours to amass $53,000 in fees and costs. Rather, the question presented was whether the fees claimed were reasonable. Thus, any potential error in excluding the invoice was harmless.

*B. The trial court did not err in relying on the referee's recommendation.*

¶ 12. Kolupar next claims that the trial court erred in relying on the discovery referee's recommendation. Kolupar concludes that the "[trial] court's reliance on [the discovery referee] was risky not only because of his limited familiarity with the proceedings, but also because [his] legal reasoning was flawed." We disagree.

¶ 13. First, our review of the record indicates that the discovery referee was quite familiar with the discovery disputes about which he was questioned. Second, the discovery referee was also able to offer insight into the general demeanor of the attorneys and their efficiency, or lack thereof. Third, and finally, WIS. STAT.

670

§ 805.17 (2001–02) explicitly allows a trial court to rely upon the findings of a referee:

**805.17 Trial to the court.**

. . . .

(2) EFFECT. In all actions tried upon the facts without a jury or with an advisory jury, the court shall find the ultimate facts and state separately its conclusions of law thereon. The court shall either file its findings and conclusions prior to or concurrent with rendering judgment, state them orally on the record following the close of evidence or set them forth in an opinion or memorandum of decision filed by the court . . . . Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses. *The findings of a referee may be adopted in whole or part as the findings of the court . . . .*

(Emphasis added.)

¶ 14. "The findings of the referee when confirmed by the court become the findings of the court." *MacPherson v. Strand*, 262 Wis. 360, 366, 55 N.W.2d 354 (1952). Because the findings of the trial court are not to be disturbed unless against the great weight and clear preponderance of the evidence, and the record here contains sufficient evidence to support the findings of the referee as adopted by the court, under the rule cited above, we will not disturb the trial court's reliance on the referee's findings. *See id.*

*C. The trial court applied a correct legal standard.*

¶ 15. "[C]ourts have the inherent power to determine the reasonableness of attorney's fees." *Herro,*

671

*McAndrews & Porter, S.C. v. Gerhardt*, 62 Wis. 2d 179, 182, 214 N.W.2d 401 (1974). "Our review of the circuit court's determination of the value of attorney's fees is limited to determining whether the circuit court properly exercised its discretion." *Village of Shorewood v. Steinberg*, 174 Wis. 2d 191, 204, 496 N.W.2d 57 (1993).

> [T]he supreme court [has] recognized that the trial court is in an advantageous position to decide the reasonableness of requested attorney's fees. It is the trial court that observes the quality of legal services rendered, it is aware of the costs incurred in operating a law practice, and it knows or can readily find out the going rate for legal services in the community. Accordingly, we will give deference to the trial court's exercise of discretion.

*Aspen Servs., Inc. v. IT Corp.*, 220 Wis. 2d 491, 495, 583 N.W.2d 849 (Ct. App. 1998) (footnote and citations omitted).

¶ 16. A trial court has discretion to hold a hearing to determine the amount of fees and expenses to be awarded. *See Narloch v. DOT*, 115 Wis. 2d 419, 437, 340 N.W.2d 542 (1983). "[I]n awarding only reasonable fees, the court may consider whether costs could have been avoided by a reasonable and prudent effort." *Aspen*, 220 Wis. 2d at 499. "This premise has been interpreted to mean that [a] plaintiff may not unnecessarily run up its legal bill in the expectation that the breaching party will ultimately pick up the entire tab." *Id.* (citation omitted). Furthermore, the trial court may consider whether the final judgment is out of proportion to the attorneys fees that were generated in the case and whether the resultant verdict justifies the amount of money expended. *See id.* at 497 n.5. Finally, SCR 20:1.5 lists additional factors that may help a trial court

determine the reasonableness of an attorney's fee. *See Steinberg*, 174 Wis. 2d at 205. SCR 20:1.5(a) states:

A lawyer's fee shall be reasonable. The factors to be considered in determining the reasonableness of a fee include the following:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent.

¶ 17. In rendering its decision, the trial court aptly summarized the situation and properly applied many of the relevant factors:

There is no formula – kind of thumbnail or formula that I operate under. . . . [T]he state legislature clearly intended in a number of different areas for fee-shifting statutes to cover those situations where a little guy can take on the big guy. And this is one of those cases where

673

the fee-shifting statute comes into play and creates [an] obligation on behalf of Wilde Pontiac.

There is no question [that] this case was over-tried. Discovery was over – well over-done. It was over-[pled] right from the get-go on the complaint. There was the shotgun pleading where everything was [pled] against Wilde short of conquering Europe during World War II.

. . . [T]he daunting discovery mountain was created right from the get-go . . . .

I am satisfied that . . . the majority of [the discovery deadlines that were missed] were missed by plaintiff's counsel. I think that is what [the discovery referee] intimated in his discussions and his recommendation . . . .

I am persuaded that the state legislature wants the little guy to be able to . . . go against the big guys, but at the same time that statute doesn't create a blank check where whatever is spent must be covered by the wrongdoer.

. . .

. . . [T]his matter was over-tried. . . . [I] appreciate [the discovery referee's] recommendation. I think it's appropriate. I happen to concur with it.

. . . Reasonable attorney's fees in my mind [are] $15,000.00. I am ordering $15,000.00 . . . for attorney's fees and costs . . . .

Thus, the trial court properly considered many of the relevant factors, including the time and labor required, the novelty and difficulty of the questions involved, the skill requisite to perform the legal service properly, the amount involved, and the results obtained. The trial

court also properly considered whether the costs could have been avoided by a reasonable and prudent effort.

¶ 18. In *Aspen*, we approved the trial court's decision to reduce fees, observing that deference to the trial court's award was appropriate because the award was reduced to promote the civility of litigation. *Aspen*, 220 Wis. 2d at 495–96. Like the dispute in *Aspen*, the case at hand was "a relatively simple contract case [that] 'burgeoned' into something in which the attorney's fees were out of proportion to the result." *Id.* at 496. The finding that there was excessive litigation justifies the trial court's reduction of Kolupar's requested attorney fees and costs. *See id.* at 497.

## D. The trial court did not deny taxable costs.

¶ 19. Finally, Kolupar contends that the trial court denied her taxable costs despite the offer of judgment made and accepted pursuant to WIS. STAT. § 807.01(1), which provided that Wilde would pay "the sum of Six Thousand Six Hundred ($6,600) Dollars *plus the taxable costs of the action.*" (Emphasis added.) Kolupar concludes that the trial court ordered a judgment that contravened this settlement because the resulting judgment expressly excluded taxable costs. While we agree with Kolupar that the June 24, 2002 final judgment expressly excluded costs, we conclude that this exclusion was the result of a clerical error, in that both the trial court's May 14, 2002 oral decision and its June 6, 2002 order for judgment expressly provided that the $15,000 award included both attorney fees *and* costs.[2]

---

[2] We remand the matter to the clerk of the circuit court for correction of the June 24, 2002 final judgment to correspond with the language of the order for judgment dated June 6, 2002.

¶ 20. When Kolupar accepted the defendant's offer of settlement, she also explained via correspondence filed on January 2, 2002, that the amount of costs, including attorney fees and litigation expenses, would be determined at a later date:

[P]ursuant to Sec. 218.01(9) (1994) . . . awards of "costs [include] a reasonable attorney fee."

Since this offer will apparently resolve plaintiff's primary claim for damages, it would appear all that would be needed in this case is a hearing to determine the reasonableness and necessity of plaintiff's attorney['s] fees and litigation expenses . . . .

Therefore . . . plaintiff accepts defendant's offer of judgment in the amount of $6,600.00, subject only to a determination of plaintiff's costs including a reasonable attorney fee . . . .

¶ 21. Following this correspondence, the trial court held hearings to determine the amount of costs, including reasonable attorney fees. At the conclusion of the hearings, the trial court clarified that the $15,000 judgment included both attorney fees and costs: "Reasonable attorney's fees in my mind [are] $15,000.00. I am ordering $15,000.00 fee to plaintiff *for attorney's fees and costs* that was originally submitted as an offer of judgment." (Emphasis added.) Counsel for Kolupar then further clarified the trial court's decision:

[KOLUPAR'S ATTORNEY]: As to the costs?

[THE COURT]: Fees and costs, $15,000.00.

In the June 6, 2002 order for judgment, the trial court again made it very clear that the $15,000 judgment included both fees and costs: "That judgment be en-

tered in favor of plaintiff and her attorneys . . . in the amount of $15,000.00, which sum represents attorney fees and costs . . . ."

¶ 22. The judgment entered on June 24, 2002, however, does not accurately reflect the trial court's order. It states: "The Court having issued its Order for Judgment, judgment is hereby entered in favor of plaintiff, Tammy L. Kolupar, and her attorneys . . . in the amount of Fifteen Thousand Dollars ($15,000.00), but no costs." Therefore, although the trial court clearly ordered $15,000 in fees and costs, the final judgment misstates the order as $15,000 in fees without costs. Accordingly, we affirm the judgment and remand this matter to the clerk of circuit courts for correction of this error.

*By the Court.*—Judgment affirmed and cause remanded with directions.

¶ 23 FINE, J. (*dissenting*). Wilde Pontiac Cadillac, Inc., and its employee Randall Thompson not only took advantage of an eighteen-year-old woman but they also delayed and obfuscated the litigation process.[1] Indeed, from my review of the record, I believe that they pursued a scorched-earth Rambo-litigation policy that has no place in our justice system.

---

[1] During the evidentiary hearing held by the trial court on the attorneys-fee issue, when Kolupar's lawyer asked her why she filed the lawsuit, the trial court interrupted: "Let's get to the point, counsel. I know what the case is about. She got defrauded." Randall Thompson's lawyer interjected "[a]llegedly," and the trial court repeated that word, "[a]llegedly." Neither the trial court's tone nor its demeanor is, of course, a matter of record.

¶ 24. Kolupar submitted a fee and cost request for approximately $53,000, of which only $41,000 was for attorneys fees. Moreover, of the approximately $12,000 in costs, $3,600 was for the following expenses that, in all but extraordinary cases, the justice system should provide to litigants without cost: mediation expenses of $1,250, and $2,350 as payment to the discovery master. Significantly, neither the Majority nor the trial court disputes that Kolupar's lawyer both:

> (1) spent the time (and incurred the expenses) working on the case as reflected by the fee request, and

> (2) that the fee request represents a fair hourly rate for the lawyer's time.

Yet, the Majority defers to the unfocused musings by both a former judge, appointed to oversee a small part of the discovery disputes in this case, and the trial court.

¶ 25. Kolupar sought her attorneys fees under a fee-shifting statute. The purpose of fee-shifting statutes is to level the litigation playing field so that aggrieved citizens like Kolupar are not barred at the courthouse door by the daunting prospect that the legal costs will outweigh any recovery. *See Hughes v. Chrysler Motors Corp.*, 197 Wis. 2d 973, 985, 542 N.W.2d 148, 152 (1996). If the Majority's decision is allowed to stand, persons like Kolupar will justifiably not only pause with trepidation at the courthouse entrance but, indeed, only the most stalwart will not turn and go away. Thus, despite what they have done, Wilde and Thompson and those like them will have won. I respectfully dissent.

## A. *Wilde and Thompson forced Kolupar's lawyer to spend the time on the case that he did.*

¶ 26. As the Majority recounts, the former judge was appointed to be discovery master. He served for four months. When the trial court asked him to give an opinion on the fee request, the former judge replied that the case grew "barnacles." It did. It did because Wilde and Thompson threw obstacles in Kolupar's path that would make James Bond and his nails- and oil-disgorging Astin-Martin green with envy. Some examples:

- Before Kolupar brought this action she offered to settle the case for $13,000, which was, essentially, her out-of-pocket costs at the time. Wilde did not make any counteroffer. Thus, Kolupar had to sue in order to get justice.

- Once suit was brought, Wilde answered, alleging that Kolupar's complaint was frivolous within the meaning of WIS. STAT. § 814.025. In my view, the charge that Kolupar filed a frivolous complaint is, itself, frivolous.

- Kolupar's action was brought in Milwaukee County, which was an appropriate venue. Wilde filed a motion to change venue to Waukesha County. That motion was denied.

- The motion by Wilde to change venue argued that the "only . . . rationale" for filing the case in Milwaukee County was because jury verdicts, as argued in the motion, are more "generous" in Milwaukee County than Waukesha county. This is *not* a recognized ground to change venue, and

679

the Majority does not contend that it is. More-over, Kolupar had not even demanded a jury trial.

- The trial court held a hearing on the motion by Wilde to change venue. Kolupar and Wilde filed briefs before and after the hearing.

- In its answer, Wilde denied that Thompson was a Wilde manager as Kolupar had alleged in her complaint. Understandably, Kolupar then sought from Wilde *via* discovery Thompson's employment file with Wilde. Kolupar also sought Wilde's files concerning a car that Kolupar had purchased from Wilde several years earlier and had used as a trade-in for the car that is the subject of this lawsuit, as well as Wilde's file in connection with Kolupar's purchase of the second car. In the face of these perfectly reasonable discovery requests, Wilde and Thompson stone-walled. Kolupar requested the documents in mid-July of 2000. Kolupar was forced to file two motions to compel discovery, which were heard on September 25, 2000, and November 27, 2000. On October 13, 2002, the trial court granted the motion to compel, and the order required that all the documents be produced within thirty days. They were not. At the second hearing, on November 27, Wilde's attorney angrily exclaimed to the trial court that "this is ridiculous that we're here. I have produced every document." Yet, by letter dated December 7, 2000, Wilde's lawyer finally produced the missing documents.

- An egregious, and sleazy, example of the Rambo tactics Wilde used is that Wilde's lawyer deposed one of Kolupar's friends about Kolupar's employment as a topless dancer and Kolupar's desire to have breast-augmentation implant surgery.

- Wilde filed a motion for summary judgment, to which Kolupar had to respond. The trial court denied the motion.

- The trial court ordered the parties to attend two mediation sessions. This, too, added to the time and expense. Wilde let the first mediation session go by without making *any* settlement offer. After the second mediation session, it made its first offer, for $6,600. Kolupar accepted this offer after she was able to persuade the bank that held the security interest in her first car (the trade-in) to accept the $6,600 as payment in full of the bank's judgment for $10,000 plus accruing interest, which, apparently, by the time of the settlement, approached approximately $20,000.

B. *The trial court never considered the factors governing the setting of attorneys fees under a fee-shifting statute.*

¶ 27. In ¶ 16, the Majority opinion sets out the factors governing a trial court's exercise of discretion in awarding attorneys fees. It is true, of course, that an award of attorneys fees is within the trial court's discretion, but that discretion "must, in fact, be exercised." *Stathus v. Horst*, 2003 WI App 28, ¶ 14, 260 Wis. 2d 166, 173–174, 659 N.W.2d 165, 168. This was not done here. The trial court here never considered on the record any of the factors. Rather, it deferred to the off-hand assessment of the former judge who, as the Majority notes, was only appointed to be a discovery master. The trial court's abdication of its responsibility was palpable, as reflected by the transcript in the record:

> I am going to ask Mr. Crivello [the former judge] to make a recommendation to the Court in front of you folks as to how I should handle this because I think that

is his — I can ask for that as the special master, and because of his rather detailed greater information than this Court has.

And on what did the discovery master rely in making his recommendation? Well, the Majority sets it all out in ¶ 7:

- His "thirty years in [the] practice of law, as well as fifteen years as a circuit judge." The retired judge graduated from law school in 1973, http://www.wisbar.org/lawyersearch/resdetails.asp?ID=1008232 (last accessed June 04, 2003), so the "fifteen years as a circuit judge" is included in the "thirty years."

- He "conducted three formal discovery hearings in this case," plus the ancillary correspondence and telephone calls. He did not preside over and was not involved in the change-of-venue hearing or the summary-judgment proceeding.

- The former judge admitted that his involvement in the case was limited and that he only was involved for some four months.

- Wilde suggested the $15,000 figure, and the former judge adopted it without any analysis beyond his view that more was not warranted because, with Kolupar's acceptance of the $6,600 offer of settlement, the case was "just barely above a small claims case."

¶ 28. In accepting the former judge's off-the-cuff "recommendation," the trial court refused to look at the extensive documentation submitted by Kolupar in support of her request for attorneys fees and related costs. The trial court relied on Milwaukee County Circuit

682

Court Local Rule 365, and the Majority validates that reliance. The rule, however, governs "motions"; it does not apply to exhibits offered at trials or evidentiary hearings. Kolupar never filed a motion for attorneys fees; the statute permits them and she demanded them in her complaint. Indeed, the trial court *sua sponte* set the hearing on the attorney-fees matter: "We'll all meet back here on the date set for trial to the court on May 13th and we'll consider the attorneys' fee issue."

¶ 29. The Majority approves of the trial court's acceptance of the former judge's recommendation because, in its view, such acceptance is sanctioned by WIS. STAT. RULE 805.17. But RULE 805.17(2) provides that a referee's "findings . . . may be adopted in whole or part as the findings of the [trial] court." The former judge was appointed to be a discovery master only—he was *not* appointed to assess Kolupar's fee request; he held *no* hearings, examined *no* evidence, and made *no* "findings."

¶ 30. As we have seen, the former judge based his recommendation in part on his view that Kolupar's acceptance of the belated $6,600 settlement offer made the matter "just barely above a small claims case." But the amount of recovery is *not* a measure of what the fee-shifting award should be in these types of cases:

> Often the amount of pecuniary loss is small compared with the cost of litigation. Thus, it was necessary to make the recovery large enough to give tenants an incentive to bring suit. The award of attorney fees encourages attorneys to pursue tenants' claims where the anticipated monetary recovery would not justify the expense of legal action.

*Shands v. Castrovinci*, 115 Wis. 2d 352, 358, 340 N.W.2d 506, 509 (1983).

¶ 31. The trial court also justified its minimal award of attorneys fees to Kolupar because "[t]he flip side is Wilde has to swallow whatever fees they have." Neither the trial court nor the Majority cites any authority for this startling proposition—that a rich defendant can frustrate at every turn a poor plaintiff's quest for justice and then say when the fee-shifting day of reckoning has arrived, "I have substantial attorneys fees myself, I shouldn't also have to pay the plaintiff's."

¶ 32. The trial court's adoption of the former judge's "just barely above a small claims case" rationale, as well as the trial court's consideration of the "flip side" of Wilde's own fees will, because the Majority has sanctioned it in a decision that is recommended for publication, gut the fee-shifting statutes. The statutes, as noted by *Shands*, were designed to keep open the courthouse doors to persons whose claims do not justify the retention of a lawyer *unless,* by prevailing, that person can recover his or her attorneys fees.

¶ 33. In my view, the trial court not only erroneously exercised its discretion in setting the attorneys fees and related costs at $15,000, it did not exercise *any* discretion. Neither the former judge nor the trial court pointed to *anything* that Kolupar's lawyer did that was not justified by the case—beyond their imbricating hunches. The law requires more.

¶ 34. No one disputes that Kolupar's lawyer did what he said he did and that his hourly rate was reasonable. In light of this, I would reverse the judgment and award to Kolupar the fees and costs she requested.

¶ 35. I respectfully dissent.