¶ 114. SHIRLEY S. ABRAHAMSON, J. (,dissenting). Unlike the majority, I conclude that civil theft is an "action based in tort" within the meaning of Wis. Stat. § 799.01(l)(cr). Therefore, the Estate's compensatory damages should be capped at $5,000, and the Estate is not entitled to double costs.[1] ¶ 115. In reaching an opposite conclusion, the majority relies entirely on unremarkable truisms and simply ignores the wealth of prior cases in which Wisconsin courts have either explicitly or implicitly characterized certain statutory causes of action as "torts" or as "sounding in tort." ¶ 116. The majority repeatedly draws distinctions between statutory claims and "common law" tort claims in order to conclude that the statutory claim for civil theft under Wis. Stat. § 895.446 cannot be a common law tort claim. In so doing, the majority pulls a bait-and-switch in order to answer a question that was never asked. ¶ 117. The question presented in the instant case is not whether a civil theft claim pursuant to Wis. Stat. § 895.446 is a "common law" tort claim. It obviously is not. Rather, the actual question presented is whether a civil theft claim pursuant to § 895.446 is an "action based in tort" under Wis. Stat. § 799.01(l)(cr). Reader beware! The majority's choice of language is calculated to erect a strawman that it can then easily set ablaze in the guise of reasoned and principled analysis. ¶ 118. I also write to make clear that I do not agree with the majority's conclusion that Wis. Stat. § 895.446(3)(b) awards attorney fees in the present case. On this issue, I largely agree with the analysis of Justice Kelly's dissent. f 119. Lastly, I conclude that the majority fails to fully delineate the elements of the private attorney general doctrine, leading to a flawed result. ¶ 120. Because a civil theft claim pursuant to Wis. Stat. § 895.446 is an "action based in tort" and attorney fees are not awardable to prevailing plaintiffs under Wis. Stat. § 895.446(3)(b), I dissent. M ¶ 121. The majority states four equally unpersuasive reasons for its conclusion that a civil theft claim pursuant to Wis. Stat. § 895.446 is not an "action based in tort," but instead, qualifies as an "other civil action" under Wis. Stat. § 799.01(l)(d). The majority reasons as follows: first, § 895.446, the civil theft statute, states that it is creating a "civil action"; second, Wisconsin case law distinguishes the statutory civil theft claim under § 895.446 from similar common-law tort claims; third, Wisconsin case law distinguishes between other statutorily created civil claims and common-law tort claims; and fourth, there is a long-standing distinction in the common law between crimes and torts, even though both may be based on the same conduct, which suggests that a plaintiff acting under a civil statute that enables enforcement of criminal law is not bringing an action based in tort. Majority op., f 34. ¶ 122. The majority's latter three reasons together suffer from the same infirmity: these three reasons answer a question that was never asked. These three reasons answer the question "Is a civil theft claim pursuant to Wis. Stat. § 895.446 a common law tort claim?" This is not the question presented by the case. The question presented is as follows: "Is a civil theft claim pursuant to Wis. Stat. § 895.446 an 'action based in tort' under Wis. Stat. § 799.01(l)(cr)?"[2] f 123. The majority spends several paragraphs explaining the unremarkable proposition that specific statutory causes of action are separate and distinct from their similar common law counterparts, see, e.g., majority op., ¶¶ 36-40, and pointing out that "there has long been a distinction in the common law between a tort claim and a criminal charge[,]" majority op., ¶ 41. f 124. The majority's analytical errors are threefold. First, the majority answers a question that is not asked. It repeatedly draws distinctions between statutory claims and common law tort claims without ever acknowledging that the question presented asks whether a statutory civil theft claim is "an action based in tort" as opposed to asking whether a statutory civil theft claim is a "common-law tort." ¶ 125. Second, the majority fails to explain why a statutory claim and a very similar, though distinct, common-law tort claim cannot both be considered actions based in tort. The great weight of Wisconsin authority confirms that statutory claims and very similar, though distinct, common-law tort claims may both be considered actions based in tort.[3] f 126. Third, the relevance of the majority's pointing out that a civil tort claim, whether created by statute or common law, is separate and distinct from a criminal prosecution for the same conduct is not apparent. There are countless crimes the commission of which will likely constitute a tort against the victim, including, for example, battery and theft. Conduct that amounts to a crime is very likely to be considered "conduct that amounts to a legal wrong and that causes harm for which courts will impose civil liability." 1 Dan Dobbs et al., The Law of Torts § 1 (2d ed. 2011). f 127. In sum, the majority opinion answers a question that was never asked in order to reach a conclusion that contradicts almost 30 years of case law. As a result, the majority is unpersuasive. ¶ 128. In addition to asking this court to determine whether a statutory civil theft claim is an "action based in tort" pursuant to Wis. Stat. § 799.01(l)(cr), the instant case also asks us to determine whether Wis. Stat. § 895.446(3)(b), specifically, the language "[a]ll costs of investigation and litigation that were reasonably incurred, including the value of the time spent by any employee or agent of the victim," includes an award for actual reasonable attorney fees to prevailing plaintiffs. ¶ 129. I agree to a large extent with Justice Kelly's dissent concluding that Wis. Stat. § 895.446(3)(b) does not provide for an award of actual reasonable attorney fees. ¶ 130. In invoking the private attorney general doctrine to support its conclusion that a plaintiff successful in proving a statutory civil theft claim is entitled to an award of attorney fees, the majority writes too broadly and misstates the private attorney general doctrine.[4] f 131. In Wisconsin, a party will be awarded attorney fees, even in the absence of contractual or statutory authorization, if that party vindicates a right that: (1) benefits a large number of people; (2) requires private enforcement; and (3) is of societal importance. See Shands v. Castrovinci, 115 Wis. 2d 352, 340 N.W.2d 506 (1983); State ex rel. Hodge v. Town of Turtle Lake, 180 Wis. 2d 62, 508 N.W.2d 603 (1993); Watkins v. LIRC, 117 Wis. 2d 753, 345 N.W.2d 482 (1984); Richland Sch. Dist. v. DILHR, 166 Wis. 2d 262, 479 N.W.2d 579 (Ct. App. 1991); accord Maness v. Daily, 307 P.3d 894, 906 (Alaska 2013); Cave Creek Unified Sch. Dist. v. Ducey, 308 P.3d 1152, 1159 (Ariz. 2013); In re Conservatorship of Whitley, 241 P.3d 840, 846 (Cal. 2010); Honolulu Const. & Draying Co., Ltd. v. State, Dep't of Land & Natural Res., 310 P.3d 301, 303 (Haw. 2013); Bitterroot River Protective Ass'n v. Bitterroot Conservation Dist., 251 P.3d 131, ¶ 20 (Mont. 2011); Highlands at Jordanelle LLC v. Wasatch Cnty., 355 P.3d 1047, ¶ 35 (Utah 2015); Ann K. Wooster, Annotation, Private Attorney General Doctrine—State Cases, 106 A.L.R. 5th 523 (2003); Carl Cheng, Comment, Important Rights and the Private Attorney General Doctrine, 73 Cal. L. Rev. 1929, 1929 (1985). ¶ 132. The seminal Wisconsin case regarding the private attorney general doctrine is Shands v. Castrovinci, 115 Wis. 2d 352, 340 N.W.2d 506 (1983). In Shands, the plaintiff, a residential tenant, commenced a small claims action against her former landlord to recover her security deposit of $145. Shands, 115 Wis. 2d at 354. The statute under which Shands sued allowed for the recovery of twice the amount of the actual pecuniary loss, together with costs, including a reasonable attorney fee. Wis. Stat. § 100.20(5) (1983-84). The circuit court found that the landlord improperly withheld her security deposit and awarded Shands $290 as damages. Shands, 115 Wis. 2d at 355. After an evidentiary hearing, the court awarded an additional $287.50 for attorney fees. Shands, 115 Wis. 2d at 355. Castrovinci appealed but was unsuccessful. Shands, 115 Wis. 2d at 356. The issue on appeal was whether Shands was entitled to an award of attorney fees incurred as a result of the appeal. Shands, 115 Wis. 2d at 357-58. The supreme court held that she was. f 133. The Shands court held that Shands was entitled to attorney fees incurred as a result of Castro-vinci's unsuccessful appeal, explaining that its decision was in accord with the purpose of the statute and public policy in general as follows: First, the recovery of double damages and attorney fees encourages injured tenants to bring legal actions to enforce their rights under the administrative regulations. Often the amount of pecuniary loss is small compared with the cost of litigation. Thus, it was necessary to make the recovery large enough to give tenants an incentive to bring suit. The award of attorney fees encourages attorneys to pursue tenants' claims where the anticipated monetary recovery would not justify the expense of legal action. While attorneys generally are willing to perform pro bono legal services in appropriate cases, we recognize that practical considerations limit the number of such suits. Second, the tenant who sues under the statute acts as a "private attorney general" to enforce the tenants' rights set forth in the administrative regulations. Thus, the individual tenant not only enforces his or her individual rights, but the aggregate effect of individual suits enforces the public's rights. Third, tenant suits have the effect of deterring impermissible conduct by landlords because, if they violate the administrative regulations, they will be subject to double damages and will be responsible for costs, including attorney fees. The deterrent effect of the statute strengthens the bargaining power of tenants in dealing with landlords. Finally, in an amicus brief the Wisconsin Department of Justice noted that private tenant actions provide a necessary backup to the state's enforcement powers under sec. 100.20, Stats. The department pointed out that the sheer number of violations prevent it from proceeding against all violators. Private tenant actions thus constitute an enforcement mechanism reinforcing that of the justice department. Shands, 115 Wis. 2d at 358-59. f 134. Wisconsin has also applied the private attorney general doctrine in cases involving the enforcement of rights under the Wisconsin Open Meetings Law, State ex rel. Hodge v. Town of Turtle Lake, 180 Wis. 2d 62, 508 N.W.2d 603 (1993), the Wisconsin Fair Employment Act, Watkins v. LIRC, 117 Wis. 2d 753, 345 N.W.2d 482 (1984), and the Wisconsin Family and Medical Leave Act, Richland Sch. Dist. v. DILHR, 166 Wis. 2d 262, 479 N.W.2d 579 (Ct. App. 1991). ¶ 135. The instant case does not meet the elements of the private attorney general doctrine, and bears no resemblance to other Wisconsin cases in which the private attorney general doctrine has been applied. ¶ 136. First, the lawsuit does not benefit the general public or a large class of persons. Though the instant case involved theft from an elderly individual, the theft statute and Wis. Stat. § 895.446 apply broadly to all individuals. The benefit conferred to the public in the lawsuit is that the law is enforced.[5] To the extent one could fairly identify a benefit conferred upon the elderly as a class, the motivation for the lawsuit in the instant case was personal monetary recovery, not the advancement of the public's interest in protecting the elderly as such. ¶ 137. Second, it does not appear that private enforcement is necessary to enforce the public's right to be free from theft. There is no evidence that prosecutors' offices across the state are overwhelmed such that private actions are needed to constitute an enforcement mechanism reinforcing the State criminal law punishing theft. See Shands, 115 Wis. 2d at 359. ¶ 138. Relatedly, and contrary to the majority's conclusion,[6] the Estate had a sufficient financial incentive to pursue litigation in the instant case. It sought $10,000 in actual damages and could have received an additional $30,000 in exemplary damages under the statute in addition to costs. Compare this potential $40,000 recovery with the $290 recovery in Shands and the lack of any monetary recovery at all to the successful plaintiff in Watkins. HH I—I H-i ¶ 139. By relying entirely on unremarkable truisms and red herrings in the guise of reasoned analysis, the majority concludes that a civil theft claim under Wis. Stat. § 895.446 is not an "action based in tort" within the meaning of Wis. Stat. § 799.01(l)(cr). Thus, the majority contravenes almost 30 years of case law compelling a contrary conclusion. 1 140. Additionally, the majority erroneously concludes that Wis. Stat. § 895.446(3)(b) affords successful plaintiffs an award for attorney fees when the statute's text, context, and structure all lead to a contrary conclusion. Compounding its errors, the majority purports to rely in part on the private attorney general doctrine for its conclusion that the Estate is entitled to attorney fees. In doing so, the majority falls to fully and correctly explain the doctrine's elements, leading to its misapplication of the doctrine. Consequently, I dissent. I agree with the majority that whether to award exemplary damages, and if so, in what amount, is a question to be decided by the finder of fact. The majority opinion explains that causes of action created by Wis. Stat. § 895.446(1), including a civil theft claim, are referred to as "civil actions." Majority op., ¶ 35; Wis. Stat. § 895.446(2), (3). It then concludes that "the use of the term 'civil action' in Wis. Stat. § 895.446 to describe the cause therein provided indicates that the cause may also be properly characterized as a 'civil action' under Wis. Stat. § 799.01." Majority op., ¶ 35. This conclusion leads nowhere. It is a dead end. Every action listed in § 799.01 is a "civil action," including all tort actions. Being a "civil action" is not a distinguishing characteristic that is helpful in determining the specific subsection of § 799.01 into which the claim of civil theft falls. See, e.g., Fandrey ex rel. Connell v. Am. Family Mut. Ins. Co., 2004 WI 62, ¶¶ 9, 19, 272 Wis. 2d 46, 680 N.W.2d 345 (recognizing "that § 174.02 [strict liability dog-bite statute] is a codified tort action" and further explaining that "the fact that liability in this case is predicated upon a statute rather than a common-law cause of action is not dispositive, as § 174.02 still sounds in tort; it is a codified cause of action for a civil wrong"); Hanlon v. Town of Milton, 2000 WI 61, ¶ 16, 235 Wis. 2d 597, 612 N.W.2d 44 (describing claim under 42 U.S.C. § 1983 as a tort); Johnson v. ABC Ins. Co., 193 Wis. 2d 35, 45-46, 532 N.W.2d 130 (1995) (describing the "purely [] statutory remedy" of wrongful death action as "an action in tort"); Shopko Stores, Inc. v. Kujak, 147 Wis. 2d 589, 433 N.W.2d 618 (Ct. App. 1988) (referring to an "underlying tort" when examining a civil action under § 943.51 for retail theft). For further background on the doctrine, see William B. Rubenstein, On What a "Private Attorney General" Is—and Why It Matters, 57 Vand. L. Rev. 2129, 2129-36, 2139-48 (2004); Carl Cheng, Comment, Important Rights and the Private Attorney General Doctrine, 73 Cal. L. Rev. 1929, 1929-41 (1985); The Supreme Court, 1974 Term, 89 Harv. L. Rev 47, 170-82 (1975). The public always has a significant interest in seeing that the laws are enforced—it always derives some benefit when illegal private or public conduct is rectified. Something more than this general benefit must be shown to make sure that the private attorney general doctrine does not become the default rule. Majority op., ¶ 59.