George T. Stathus and Jill J. Stathus, Plaintiffs-Respondents,

v.

James H. Horst and Georgia J. Edwards, Defendants-Appellants.

Court of Appeals

*No. 02–0543. Submitted on briefs December 3, 2002.—Decided January 14, 2003.*

2003 WI App 28

(Also reported in 659 N.W.2d 165.)

On behalf of the defendants-appellants, the cause was submitted on the briefs of *Lawrence A. Trebon* and *Gerald J. Mayhew* of *Trebon & Mayhew*, Milwaukee.

On behalf of the plaintiffs-respondents, the cause was submitted on the brief of *Joseph J. Kroening* of *Stevens & Kroening LLC*, Brookfield.

Before Wedemeyer, P.J., Fine and Curley, JJ.

¶ 1. WEDEMEYER, P.J. James H. Horst and Georgia J. Edwards appeal from an amended judgment entered after we remanded their case following the first appeal. Horst and Edwards contend that the trial court erred at remand in trebling the damages and in its award of attorney's fees. Because the trial court did not erroneously exercise its discretion in awarding treble damages, we affirm. But, because it erroneously exercised its discretion in awarding attorney's fees, we reverse and remand with directions.

## BACKGROUND

¶ 2. This is the second appeal in this matter. After a bench trial, the trial court concluded that Horst and Edwards intentionally misrepresented the condition of the house that they sold to the Stathuses. The basis for the claim was Horst's and Edward's failure to disclose, either in the Real Estate Condition Report or otherwise, the basement water problems, and the problems related to an underground spring, which ran through the property causing water to flow across the sidewalk in front of the home. As part of the judgment, the trial court awarded the Stathuses $5000 in compensatory damages, and $3000 in attorney's fees. Both parties appealed from those rulings.

¶ 3. On the first appeal, we affirmed the trial court's conclusion that the sellers made a misrepresentation. *See Stathus v. Horst*, No. 00–0933, unpublished slip. op. (Wis. Ct. App. April 10, 2001) (*Stathus* I). That factor is not a subject of this appeal. In *Stathus* I, we also ordered that the award of damages and the attorney's fees be reconsidered because the trial court's awards did not reflect any exercise of discretion. *Id.* at ¶ 25. The case was remanded to the trial court. After briefing and a review of the record, a successor trial judge trebled the damages to $15,000, and increased the award of attorney's fees to $22,000.[1] Horst and Edwards now appeal.

---

[1] The case was originally tried before the Honorable Stanley A. Miller. Our remand order specifically instructed that the case be remanded to the original trial judge. Before that could happen, however, Judge Miller died. As a result, the matter was assigned to the Honorable Thomas Cooper.

## DISCUSSION

*A. Treble Damages.*

¶ 4. Horst and Edwards first contend that the trial court erroneously exercised its discretion in trebling the damage award. They argue that they requested the remand court to detail facts to backup the discretion exercised by the original trial court, but not to second-guess the original trial court's discretion or disturb its ruling in any way. Instead, they claim, the remand court supplanted its decision for that of the original trial court without giving any deference to the original trial court, and without giving any facts to support its own exercise of discretion. We are not convinced.

¶ 5. As noted in our opinion generated from the first appeal, whether to award treble damages under WIS. STAT. § 895.80(3)(a) (1999–2000),[2] is a matter left to the discretion of the trial court. We will uphold that ruling as long as the trial court did not erroneously exercise its discretion, which requires a "reasonable inquiry and examination of the facts" to reach a reasonable conclusion. *See Howard v. Duersten*, 81 Wis. 2d 301, 305, 260 N.W.2d 274 (1977). We conclude that, on remand, the trial court complied with our direction and properly exercised its discretion to reach a reasonable conclusion.

¶ 6. In *Stathus* I, we cited Judge Miller's oral decision: "I would agree with [the lawyer for Horst and Edwards] in regards to tripling of damages. This is

---

[2] All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise noted.

not an appropriate case that the Court heard of the facts at trial and that is denied." *Stathus* I, No. 00–0933, at ¶ 25.

¶ 7. In response, we stated: "Here again, we have no way to gauge the trial court's rationale, and accordingly . . . we remand this matter to Judge Miller for reconsideration of the damage award and an explanation of the basis for the exercise of his discretion." *Id.*

¶ 8. If we accept the underlying premise supporting Horst's and Edwards's claim of error, which restricts the trial court's examination of the record to only evidence supporting Judge Miller's conclusions, we would, in effect, render the substance of our remand instruction meaningless. To "reconsider" as directed in our order means: "to consider again especially with the intent to alter or modify." AMERICAN HERITAGE DICTIONARY 1510 (3d ed. 1992); *see also Jenson v. Employers Mut. Cas. Co.*, 161 Wis. 2d 253, 273–74, 468 N.W.2d 1 (1991) (we may resort to standard dictionary to determine meaning of an ambiguous word).

¶ 9. We ordered the same judge who presided over the trial to reconsider the question of damages. Regrettably, because of his death, this could not be achieved. Nevertheless, the intent of the order remains the same—to reconsider with the intent of altering or modifying the original ruling. Contemporaneously, the Stathuses filed a motion for reconsideration. The successor judge prudently read relevant portions of the record, ordered additional briefing, and granted oral argument. There was little more that it could do to replicate the trial, and at the same time comply with our remand order. At the conclusion of oral argument, the successor court ruled:

> My reading of the testimony and the evidence presented to Judge Miller offended me by the activities

171

by the seller of the property. There is no other interpretation I can draw from the facts as described that there was a willful concealment or a convenient forgetting of the issue of a leaky basement.

I think the Court would—can conclude 895.80—that the $5,000 should be tripled to $15,000.

¶ 10. Although Horst and Edwards point out many discrepancies and contradictions in the Stathuses' case, which can be said to support the initial denial of treble damages, the record demonstrates the following facts. The residence had a seepage problem in the basement and an outside spring water problem. For two years during the listing agreement with a real estate agent, Horst and Edwards noted on the Real Estate Condition Report that there was water seepage in the basement, and water emanating from a spring found under the front lawn. During this two-year period, the real estate agent informed Horst and Edwards that the number one reason why the home was not selling was the "leaky basement." On July 31, 1997, the agent's listing agreement expired. A new agent, Fritz Roth, was hired. On August 20, 1997, a new Real Estate Condition Report was executed by Horst and Edwards. Contrary to the earlier report, there was no disclosure of either seepage in the basement, or the existence of the spring under the front lawn, which was causing water to run over the sidewalk.

¶ 11. The logic of the successor court's conclusion is compelling. Because Horst and Edwards knew the reasons why the house was not selling, they chose not to disclose the water problems in the new condition report. On November 14, 1997, the Stathuses signed an offer to purchase and, on December 5, 1997, they purchased the residence. The court concluded that the

willful concealment was of such a nature to warrant trebling the damages. There is both a basis in the record, and sound logic in the court's analysis. Thus, the trial court did not erroneously exercise its discretion in following the intent of our remand order.

*B. Attorney's Fees.*

¶ 12. Horst and Edwards next claim that the trial court erroneously exercised its discretion in awarding attorney's fees in the sum of $22,000. After three days of trial, the Stathuses prevailed in their misrepresentation claim, and the trial court awarded them $3000 in attorney's fees. In the first appeal, the Stathuses claimed that Judge Miller had erroneously exercised his discretion when he reduced their attorney's fee claim of $16,350 to $3000, without any explanation. In *Stathus* I, we concluded that there was no evidence to show that discretion was actually exercised in making the award; therefore, we remanded the matter to the trial court and asked the trial court to reconsider the attorney's fees award, and explain how it arrived at the award. *Stathus* I, No. 00–0933, at ¶¶ 22–24.

¶ 13. On remand, and after additional briefing and oral argument, the successor court increased the award for attorney's fees to $22,000 based upon what appears to be an hourly rate multiplied by the hours spent. It discounted the hourly rate of $150 on portions of the time spent on the appeal work, and then declared the award it made to be reasonable. Again, we must reverse and remand on this issue for the reasons that follow.

¶ 14. A trial court's award of attorney's fees is vested in that court's discretion. *Standard Theatres, Inc. v. State Dep't of Transp.*, 118 Wis. 2d 730, 747, 349

N.W.2d 661 (1984). This discretionary power, however, must, in fact, be exercised. *Howard*, 81 Wis. 2d at 305. An exercise of discretion requires a reasonable inquiry and an examination of the pertinent facts. Among the factors to be considered are:

> (a) The time and labor required, the novelty and difficulty of the questions involved and the skill requisite to perform the legal service properly.

> (b) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.

> (c) The fee customarily charged in the locality for similar legal services.

> (d) The amount involved and the results obtained.

> (e) The time limitations imposed by the client or by the circumstances.

> (f) The nature and length of the professional relationship with the client.

> (g) The experience, reputation and ability of the lawyer or lawyers performing the services.

> (h) Whether the fee is fixed or contingent.

*Standard Theatres*, 118 Wis. 2d at 749–50 n.9 (quoting with approval the ethical standards governing the attorney-client relationship as to the reasonableness of the fees).

¶ 15. The Stathuses contend the increase in the attorney's fees award was reasonable for two reasons. First, they argue that the appropriate statute to examine when reviewing a trial court's fee award is Wis. Stat.

§ 100.18 because that statute was the basis for the award of fees. Based on that statute, the Stathuses contend the $22,000 was appropriate. We are not convinced.

¶ 16. When the original $3000 fee award was made, the trial court did not make findings under Wis. Stat. § 100.18. Rather, the trial court deleted the reference to § 100.18 from the proposed findings and conclusions document submitted by the Stathuses. In addition, it is clear from the record that the successor trial court recognized it was operating under the calls of Wis. Stat. § 895.80(3), and not § 100.18.

¶ 17. Unlike in *Stathus* I, the current record before us sheds a different light upon the attorney-client relationship that existed between the Stathuses and their counsel throughout the course of this litigation. Our review demonstrates that the Stathuses executed a contingent fee agreement with their counsel. By its terms, the agreement provides that counsel would recover 33 1/3% of the gross settlement or judgment as payment for the legal services rendered. In the event of an appeal to this court, the percentage is increased to 40% of the gross settlement or judgment. The agreement clearly provides that the Stathuses understood their counsel could have been retained on an hourly basis, but they expressly declined that option.

¶ 18. As noted, the original trial court awarded damages to the Stathuses under Wis. Stat. § 895.80. Section 895.80(3) provides: "If the plaintiff prevails in a civil action under sub. (1), he or she may recover all of the following: (a) Treble damages. (b) All costs of investigation and litigation that were reasonably incurred." Section 895.80(3)(b) is quite precise when it details that the cost of investigation and litigation which may be recovered must actually: (1) be in-

curred; and (2) be reasonable. This claim of error then presents an issue of first impression in Wisconsin whether a trial court can award attorney's fees which exceed what was actually "incurred," contrary to the clear language of § 895.80(3)(b).

¶ 19. The Stathuses' second reason suggesting that the attorney's fees award was appropriate is based on several cases: *Blanchard v. Bergeron*, 489 U.S. 87, 94 (1989); *Sargeant v. Sharp*, 579 F.2d 645, 648 (1st Cir. 1978); *Thompson v. Village of Hales Corners*, 115 Wis. 2d 289, 312, 340 N.W.2d 704 (1983); and *First Wisconsin National Bank v. Nicolaou*, 113 Wis. 2d 524, 540, 335 N.W.2d 390 (1983). They argue these cases hold that the existence of a contingent fee agreement is not determinative when calculating the award for fees. We are not persuaded.

¶ 20. The *Blanchard, Sargeant,* and *Thompson* courts applied the fee-shifting provisions of the Federal Civil Rights Act, 42 U.S.C. § 1988, which provides that "the court in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of costs." These three cases examined the fee-shifting provision *vis-à–vis* the existence of a contingent fee agreement.

¶ 21. The *First Wisconsin National Bank* court examined the award of attorney's fees under the Wisconsin Consumer Act. WISCONSIN STAT. § 425.308 allows a customer prevailing in an action arising from a consumer transaction to recover "a reasonable amount for attorney fees." The common element existing in all of these cases that distinguishes them from the claim of error proffered by Horst and Edwards is that the provision for reasonable fees was not restricted by the statutory limitation involved here of what was "incurred."

¶ 22. By way of contrast, in *Marré v. United States*, 38 F.3d 823 (5th Cir. 1994), the government argued that the trial court erred in awarding attorney's fees to Marré in an amount greater than those required under his contingent fee agreement with his attorney. *Id.* at 828. The issue arose under the Internal Revenue Code, 26 U.S.C. § 7430(a)(2), which provides that "the prevailing party may be awarded a judgment . . . for reasonable litigation costs *incurred.*" (Emphasis added.) Section 7430(c)(1)(B)(iii) of the Internal Revenue Code includes as reimbursed costs, the reasonable fees "paid or incurred" for the services of an attorney. Marré agreed to pay his counsel 50% of any recovery, plus costs. *Marré*, 38 F.3d at 828. Marré was awarded $215,000. The government argued that Marré was entitled to only $107,500 in an attorney's fees award, based upon the contingent fee agreement. *Id.* The trial court disagreed and awarded a fee based upon the hourly rate per hour, plus costs, for a total of $326,182.62. *Id.*

¶ 23. Agreeing with the position of the government, the third circuit pointed to decisions interpreting the fee-shifting provisions of the Uniform Relocation Assistance and Real Property Acquisition Policies Act, 42 U.S.C. § 4654, and the Equal Access to Justice Act, 28 U.S.C. § 2412, both of which contained an "incurred" provision limitation. *Marré*, 38 F.3d at 828. In doing so, the court expressly rejected the *Blanchard* rationale because the applicable statute limited attorney's fees to those actually *incurred* or actually obligated.[3] *Id.* at 829.

---

[3] *See State of Oklahoma ex rel. DOT v. Norman Indus. Dev. Corp.*, 2001 OK 72, ¶ 15, wherein the Oklahoma Supreme Court stated:

> The majority of courts considering the issue find that the phrase "actually incurred" limits the attorney fees which may be awarded

¶ 24. We find the *Marré* analysis compelling. The language of WIS. STAT. § 895.80(3)(b) contains two prerequisites: (1) the cost of investigation; and (2) litigation must have been *incurred* (here via a contingent fee agreement), and then must be scrutinized for reasonableness. As reflected by the record, neither element contained in the statute was examined by the remand court; therefore, discretion was not properly exercised. The trial court needs to base the attorney's fees award on these two factors. That is, the award must be based on the attorney's fees that were actually incurred and that amount must be reasonable.

## CONCLUSION

¶ 25. For the reasons stated, we affirm the trial court in its ruling to treble the damages, but reverse with respect to the award of attorney's fees. In regard to the latter, we remand the matter and order the trial court to reconsider its award in light of the rule of limitation imposed by WIS. STAT. § 895.80(3)(b), and then apply the appropriate standards for determining "reasonableness" set forth in *Standard Theatres*, 118 Wis. 2d at 747.

*By the Court.*—Amended judgment affirmed in part; reversed in part and cause remanded with directions.

to the client's actual outlay or contractual obligation. These courts reason that use of the term "actually incurred" is clear and unambiguous and that it is intended to define the maximum amount of fees which may reasonably be allowed under such legislative schemes.