ESTATE OF Stanley G. MILLER c/o Genevieve Miller,
Personal Representative,
Plaintiff-Respondent,†

v.

Diane STOREY,
Defendant-Appellant.

Court of Appeals

*No. 2014AP2420. Submitted on briefs April 7, 2015.
—Decided August 16, 2016.*

2016 WI App 68

† Petition for Review filed.

669

672

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Jennifer A. Slater Carlson* of *Legal Advantage, LLC*, Cedarburg.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Scott A. Swid* and *Benjamin J. Krautkramer* of *Swid Law Offices, LLC*, Mosinee.

Before Stark, P.J., Hruz and Seidl, JJ.

¶ 1. SEIDL, J.[1] Diane Storey appeals a small claims money judgment entered after a jury trial and posttrial motions, in which the court awarded the Estate of Stanley G. Miller (the Estate) sums totaling $52,629.90. That amount included restitution damages, exemplary damages, double statutory costs, and actual attorney fees. Storey argues she was never given actual notice of any claim for theft under Wis.

---

[1] This appeal is decided by a three-judge panel pursuant to the Chief Judge's August 13, 2015 order.

STAT. § 895.446,[2] and, therefore, the circuit court should not have allowed any damages or other relief under that statute. Further, Storey contends statutory damages under § 895.446 may not be awarded where the Estate failed to plead exemplary damages. Storey also argues her handwriting expert should not have been precluded from offering part of his expert opinion. We reject these arguments.

¶ 2. Storey further argues that, even if exemplary damages were properly pled, the jury, not the court, must award them. In addition, Storey asserts the circuit court's award exceeds the statutory limit for small claims judgments. Storey also contends the court erred in awarding actual attorney fees under WIS. STAT. § 895.446(3)(b), in awarding double costs in this case, and ordering the judgment be deemed restitution. We conclude Storey is correct on all of these arguments. We therefore reverse the judgment.

## BACKGROUND

¶ 3. On February 28, 2013, the Estate commenced a small claims action against Storey. The form small claims complaint alleged a claim for money damages of $10,000 or less. Specifically, the complaint alleged: "The Defendant, Diane Storey, has misappropriated funds from the Estate of Stanley Miller in the amount of $10,000.00. Plaintiff seeks reimbursement of said funds to the Estate." Storey denied the allegations of the complaint in her answer.

¶ 4. Storey prevailed at a small claims trial to the court commissioner. The Estate then filed a demand for a de novo jury trial. During the final pretrial

---

[2] All references to the Wisconsin Statutes are to the 2013–14 version unless otherwise noted.

conference approximately one month before the jury trial, the Estate submitted proposed jury instructions and a proposed special verdict. Storey did not present her own versions of either and did not object to the Estate's submissions, which included a special jury instruction for "Theft; Civil Liability—Wɪs. Sᴛᴀᴛ. § 895.446 (Based on Conduct (Theft) Prohibited by Wɪs. Sᴛᴀᴛ. § 943.20)."

¶ 5. The jury trial was held on January 9 and 10, 2014. Testimony introduced at trial showed that Stanley Miller was eighty-six years old in May 2010 when Storey, his niece, came to Hatley, Wisconsin, to serve as his caretaker. Storey cared for Stanley through May 2011. During that time, Storey helped Stanley by doing his shopping, cooking meals, doing laundry, taking him to appointments, getting his mail, and other necessary tasks. Storey also helped Stanley with his checkbook and paying bills. At Stanley's request, Storey wrote out checks for him, which he then signed. While Storey wrote check entries in Stanley's checkbook ledger, she never balanced his checkbook.

¶ 6. After Stanley passed away in July 2011, his sister, Genevieve Miller took on the role of personal representative of the Estate. When the Estate noticed Stanley had signed up for online banking, it raised a concern, because Stanley did not have internet access. Stanley's bank had flagged the request for internet banking as suspicious. When the bank's manager called the telephone number on the request form, he spoke first with Storey and then Stanley, but he believed Stanley was being coached in his answers by Storey. Storey denied having ever set up internet banking on Stanley's behalf. Funds from Stanley's bank accounts were withdrawn in large amounts over

the course of the year Storey stayed with Stanley. Storey's property taxes in Horicon, Wisconsin, were paid from Stanley's checking account. Personal checks were being made payable to "Cash." One check was issued for cat food in the amount of $450. Another check was payable to a collection agency, which witnesses testified seemed out of character for Stanley.

¶ 7. Eleven checks written from Stanley's account were at issue in the trial. Storey testified she was not aware of those checks, and they were neither written nor signed by her. The Estate was able to correlate several of the checks written from Stanley's account with funds deposited into Storey's own bank account. Storey claimed someone else deposited the checks into her account and that she was the victim of identity theft. She explained that during the year she was at her uncle's home she did not review her own bank account because she rarely wrote checks from it. During that time, she lived mostly on cash that was sent to her by her aunt, Leone Seidel. In May 2011 she left Stanley's home because she needed to have significant oral surgery. At that time, she discovered someone had accessed her account and drained it, substantially overdrawing it. Storey further testified she was unaware anything was awry with Stanley's checking account until 2012, when this lawsuit was initiated against her.

¶ 8. At trial, Storey called a forensic document examiner and handwriting expert, Curt Baggett, to testify. Baggett testified that Storey's handwriting did not appear on the eleven checks at issue.

¶ 9. The jury returned a verdict finding Storey had taken $10,000 from Stanley prior to his death. On motions after verdict, the circuit court held that the Estate successfully presented a case for civil liability

677

theft pursuant to Wɪs. Sᴛᴀᴛ. § 895.446 and that the Estate requested damages pursuant to § 895.446(3)(a). The circuit court further found that, while Storey had no notice of the § 895.446 claim from the complaint, Storey had notice of that claim through the jury instruction proposed by the Estate, which referenced that statute.

¶ 10. The circuit court awarded a money judgment in the amount of $51,629.90[3] consisting of: (1) $10,000 for the misappropriation of funds as awarded by the jury, pursuant to Wɪs. Sᴛᴀᴛ. § 895.446(3)(a); (2) exemplary damages in the amount of $20,000, as found by the court, pursuant to § 895.446(3)(c); (3) taxable costs in the amount of $814.95, pursuant to Wɪs. Sᴛᴀᴛ. § 799.25, and the doubling of those costs for an additional $814.95, pursuant to Wɪs. Sᴛᴀᴛ. § 807.01(3); and (4) attorney fees in the amount of $20,000, pursuant to § 895.446(3)(a)1. The circuit court further held the judgment was an award of restitution, apparently so that it would be nondischargeable in bankruptcy. Storey now appeals.

## DISCUSSION

¶ 11. Storey argues she was never given actual notice, from the complaint or otherwise, of any claim for damages for theft under Wɪs. Sᴛᴀᴛ. § 895.446, and, therefore, the circuit court should not have allowed any damages under that statute. After the trial, the court held Storey had notice of the statutory claim from the pretrial submission of jury instructions and essentially granted leave to amend the complaint to

---

[3] The judgment shows a total of $52,629.90, which is $1,000 higher than the actual itemized damages.

allege a claim for damages under that statute. Granting leave to amend a complaint is a discretionary decision. *Mach v . Allison*, 2003 WI App 11, ¶ 20, 259 Wis. 2d 686, 656 N.W.2d 766. Storey also argues her handwriting expert should not have been precluded from offering part of his opinion. The decision to admit or exclude evidence is a matter of circuit court discretion. We do not disturb the circuit court's discretionary decisions unless the court erroneously exercised its discretion. *See Weborg v. Jenny*, 2012 WI 67, ¶ 41, 341 Wis. 2d 668, 816 N.W.2d 191; *Hess v. Fernandez*, 2005 WI 19, ¶ 12, 278 Wis. 2d 283, 692 N.W.2d 655.

■

¶ 12. Storey further argues exemplary damages under Wis. Stat. § 895.446(3)(c) may not be awarded where the Estate failed to plead exemplary damages; even if pleaded, the jury, not the court, must award exemplary damages; the judgment erroneously exceeded the small claims limit under Wis. Stat. § 799.01; § 895.446(3)(b) does not allow an award of attorney fees; the award of double costs in this case is erroneous; and holding that the judgment is an award of restitution is inappropriate. These are all questions of law which we review de novo. *See Bryhan v. Pink*, 2006 WI App 111, ¶ 13, 294 Wis. 2d 347, 718 N.W.2d 112.

*I. Notice of the Estate's claim under* Wis. Stat. *§ 895.446*

■

¶ 13. The form complaint is void of any reference to a cause of action for civil liability theft pursuant to Wis. Stat. § 895.446. The prayer for relief stated only a claim for reimbursement of the $10,000 allegedly

taken from the Estate. Storey claims the first time she was made aware the Estate was pursuing a statutory cause of action under § 895.446 was in the Estate's motions after verdict, which requested a total judgment exceeding $50,000. However, on motions after verdict, the circuit court found

> based on this record that the plaintiff did successfully present a case for civil liability theft pursuant to Section 895.446. In fact, the defendant has long been on notice of the nature of this claim. Not only is it clear from the complaint and various hearings held, but it is clearly spelled out in the plaintiff's requested jury instructions dated October 29, 2013.
>
> Within that request is a specialized jury instruction for theft[—]civil liability, pursuant to Wis. Stat. Section 895.446, based on conduct, theft, or fraud. It further referenced Wisconsin Jury Instruction Criminal 1441, theft, pursuant to Section 943.20.

¶ 14. When an issue not raised by the pleadings is tried by express or implied consent of the parties, it shall be treated in all respects as if the claim had been raised in the pleadings. WIS. STAT. § 802.09(2). When the circuit court finds the issue has been tried with consent of the parties, the court should amend the pleadings. *State v. Peterson*, 104 Wis. 2d 616, 631, 312 N.W.2d 784 (1981). Here, the circuit court properly determined Storey had ample notice of the Estate's claim for statutory theft based upon Storey's agreement to instruct the jury on civil liability theft under WIS. STAT. § 895.446, and the submission of a special verdict question on the issue of her theft under that statute to the jury.

¶ 15. Storey relies upon *Hess* in support of her argument she had insufficient notice of the Estate's

claim for statutory theft and associated damages. In *Hess*, the supreme court determined that proper application of WIS. STAT. § 802.09 requires a circuit court to determine if there was express consent to amend the pleadings or whether the issues were tried with the implied consent of the defendant. *Hess*, 278 Wis. 2d 283, ¶¶ 13–14. In finding that no actual notice existed, the *Hess* court relied upon the facts that: (1) there was no specific prayer for relief under WIS. STAT. § 51.61(7); (2) there was no discussion of an award for damages under that statute prior to trial; and (3) there was no request for an instruction or inclusion of a special verdict question specific to the statute. *Id.*, ¶¶ 16–17. Thus, the court found as a matter of law that, under those circumstances, there was no actual notice to the defendants of the claim. *Id.*, ¶ 17. Here, however, there was a request for an instruction and inclusion of a special verdict question specific to the statute. As a result, the circuit court properly exercised its discretion in concluding Storey had notice of the Estate's WIS. STAT. § 895.446 claim and amending the complaint to conform to the parties' implied agreement to try the claim for statutory theft.

*II. Award of exemplary damages by the circuit court*

■■■

¶ 16. Storey argues that an award of exemplary damages in a jury trial must be decided by the jury, and not, as here, by the circuit court on motions after the verdict. We agree. Whether to award statutory exemplary damages is a question for the jury, not for the circuit court. *Shopko Stores, Inc. v. Kujak*, 147 Wis. 2d 589, 600, 433 N.W.2d 618 (Ct. App. 1988). In

*Shopko*, Kujak claimed she had a right to have a jury determine the amount of exemplary damages, if any, to be awarded under the statute. *Id.* at 599–600. This court agreed and reversed the circuit court's judgment. *Id.* at 602–03. The language of the statute involved in *Shopko* as to exemplary damages, WIS. STAT. § 943.51(2)(a)1. and (2)(a)2. (1985–86), and the language concerning exemplary damages under WIS. STAT. § 895.446(3)(c) at issue here are virtually identical. Both statutes provide for "exemplary damages of not more than 3 times the amount under" the subsection awarding actual damages. *See* WIS. STAT. §§ 943.51(2)(a)1. and ((2)(a)2. (1985–86); 895.446(3)(c). Both statutes, again with practically identical language, also state that no additional proof is needed for exemplary damages once the plaintiff has prevailed under that statute. Accordingly, we hold § 895.446(3)(c) should be interpreted to require that a jury decide whether exemplary damages should be awarded and in what amount.

¶ 17. The Estate correctly notes that Storey never argued in the circuit court that the jury should have decided the issue of exemplary damages. As a result, the Estate asserts Storey forfeited that argument on appeal. Generally, we do not consider legal issues that are raised for the first time on appeal. *Hopper v. Madison*, 79 Wis. 2d 120, 137, 256 N.W.2d 139 (1977). However, we may exercise our discretion to make exceptions. *Id.* As discussed above, we are presented here with a clear, settled rule, under which the Estate was not entitled to these damages without a jury verdict. In addition, we note the new issue raised is a question of law, the parties have briefed the issue, and there are no disputed issues of fact

regarding the new issue. *See State v. Bodoh*, 226 Wis. 2d 718, 737, 595 N.W.2d 330 (1999). While reversal here may have the effect of blindsiding the circuit court, which we do not do lightly, the clarity of the rule justifies our approach. For these reasons, we exercise our discretion to review the issue. *See Hartford Ins. Co. v. Wales*, 138 Wis. 2d 508, 510–11, 522, 406 N.W.2d 426 (1987).

¶ 18. The Estate argues that even if we were to consider Storey's argument that she was unaware exemplary damages were available prior to the Estate's postverdict motions, a separate jury could have been empaneled to determine the damages question. *See, e.g., Badger Bearing, Inc. v. Drives & Bearings, Inc.*, 111 Wis. 2d 659, 673–74, 331 N.W.2d 847 (Ct. App. 1983) (compensatory damages and punitive damages are entirely separable; a trial may be held on the single issue of punitive damages). The Estate further argues Storey did not make a jury demand in this case; the Estate requested a jury. The Estate contends that if Storey wished to have the jury hear the exemplary damages issue, the failure to make such an argument in the circuit court was fatal to any right Storey may have had available. However, it is the Estate that sought exemplary damages. Therefore, it was the Estate, not Storey, who was obligated to request a special verdict question on exemplary damages. The Estate never requested a jury instruction or special verdict question to address an award of exemplary damages. As stated above, the circuit court erred in awarding exemplary damages on the Estate's postverdict motion. We therefore reverse the award of exemplary damages.

## III. The small claims limit

¶ 19. Small claims procedures are exclusively limited to those matters set forth in Wis. Stat. § 799.01. That statute states in relevant part:

> (1) Exclusive use of small claims procedure. Except as provided in ss. 799.02(1) and 799.21(4) and except as provided under sub. (2), the procedure in this chapter is the exclusive procedure to be used in circuit court in the following actions:
>
> . . . .
>
> (cr) *Third-party complaints, personal injury claims, and tort claims.* Third party complaints, personal injury claims, and actions based in tort, where the amount claimed is $5,000 or less.
>
> (d) *Other civil actions.* Other civil actions where the amount claimed is $10,000 or less . . . .

As set forth above, the jury awarded the Estate $10,000 in compensatory damages, and the circuit court awarded an additional $20,000 in exemplary damages. Storey challenges both awards as exceeding the small claims limit under § 799.01.

¶ 20. As discussed above, on motions after verdict, the circuit court amended the pleading to conform to the parties' implied or express agreement to try the case under Wis. Stat. § 895.446. We have upheld the court's discretion in doing so. *See supra* ¶¶ 13–15. However, the Estate did not move to amend the complaint to a "large" claims action and in the posttrial hearing, the court specifically referred to the $10,000 small claims limit a number of times.

¶ 21. The Estate's small claims complaint, as amended by the circuit court posttrial, alleged claims against Storey for misappropriation of funds and theft.

However, the Estate does not respond to Storey's assertion that civil theft claims under Wɪs. Sᴛᴀᴛ. § 895.446(3)(c) are tort claims, other than to note when it filed the action it did not assign the case code for a tort claim, opting instead to use the case code for a larger limit money claim. We therefore need not resolve the issue, because we deem it conceded for purposes of this case. *See Charolais Breeding Ranches, Ltd. v. FPC Sec. Corp.*, 90 Wis. 2d 97, 109, 279 N.W.2d 493 (Ct. App. 1979) (unrefuted arguments are deemed conceded). Accordingly, the circuit court should have limited the Estate's judgment for compensatory damages to $5,000 rather than the $10,000 awarded. We have reversed the $20,000 exemplary damages on other grounds, and therefore need not address that award as exceeding the small claims monetary limit. *See supra* ¶¶ 16–18.

*IV. Award of attorney fees under Wɪs. Sᴛᴀᴛ. § 895.446*

¶ 22. The circuit court awarded the Estate attorney fees in the amount of $20,000 pursuant to Wɪs. Sᴛᴀᴛ. § 895.446(3)(b). Storey claims the circuit court erred by granting any attorney fees exceeding the statutory fees provided for under Wɪs. Sᴛᴀᴛ. § 814.04(1). Wisconsin adheres to the American rule on the award of attorney fees. *Gorton v. Hostak, Henzl & Bichler, S.C.*, 217 Wis. 2d 493, 510, 577 N.W.2d 617 (1998). "[T]he prevailing litigant is generally not entitled to collect attorney's fees from the opposing party as damages or costs." *Id.* at 511. "An award of attorney fees may be obtained 'only where such fees are authorized by statute or contract . . . .' " *Id.*

¶ 23. The circuit court awarded attorney fees under Wis. Stat. § 895.446(3)(b), which provides: "(3) If the plaintiff prevails in a civil action under sub. (1), he or she may recover all of the following: . . . (b) All *costs of* investigation and *litigation* that were reasonably incurred, including the value of the time spent by any employee or agent of the victim." (Emphasis added.) Subsection (3)(b) does not specifically mention attorney fees. We therefore must interpret the statute and determine whether "[a]ll costs of . . . litigation" includes actual attorney fees incurred by the Estate.

¶ 24. "The goal of statutory interpretation is to ascertain and give effect to the legislature's intent." *Nelson v. McLaughlin*, 211 Wis. 2d 487, 495, 565 N.W.2d 123 (1997). In general, statutory language is given its common, ordinary and accepted meaning. *State ex rel. Kalal v. Circuit Court for Dane Cty.*, 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110. If the meaning of a statute is clear from its language, courts are prohibited from looking beyond such language. *Nelson*, 211 Wis. 2d at 495–96. However, if the language of a statute is ambiguous, courts must look at the history, scope, context, subject matter, and object of the statute to discern legislative intent. *Id.* at 496.

¶ 25. "Statutory language is interpreted in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results." *Kalal*, 271 Wis. 2d 633, ¶ 46. Where the legislature uses similar but different terms in a statute, particularly within the

same section, it is presumed that the legislature intended such terms to have different meanings. *Nelson*, 211 Wis. 2d at 496.

¶ 26. It is not clear from the language of WIS. STAT. § 895.446(3)(b) whether "[a]ll costs of . . . litigation" includes actual attorney fees. Therefore, we look at the history, scope, and context of the statute to discern legislative intent. While § 895.446(3)(b) does not specifically mention attorney fees, § 895.446(3m) subsequently provides, in part:

> (3m)(a) In this subsection, "plant" includes the material taken, extracted, or harvested from a plant, or a seed or other plant material that is being used or that will be used to grow or develop a plant.
>
> (b) If the violation of s. 943.01(1) involves the circumstances under s. 943.01(2d), the court may award a prevailing plaintiff the reasonable *attorney fees* incurred in litigating the action . . . .

(Emphasis added.) Thus, the legislature specifically indicated "attorney fees" are available in § 895.446(3m)(b) claims, which are a subset of all the § 895.446(1) claims already subject to the "[a]ll costs of . . . litigation" language under § 895.446(3)(b). Storey argues that the legislature did not intend attorney fees to be awarded under subsec. (3)(b) as it used the words "costs of . . . litigation" and not "attorney fees" as it did in subsec. (3m)(b). Given the different language of the two subsections of that statute, Storey argues that the legislature's intent to make attorney fees available under subsec. (3m)(b) but not under subsec. (3)(b) is obvious. We find this argument compelling under the rule of statutory interpretation that when the legislature uses similar

687

but different terms in a statute, particularly within the same section, it is presumed that the legislature intended such terms to have different meanings. *See Nelson*, 211 Wis. 2d at 496.

¶ 27. In addition, a statute should be construed so that no word or clause is rendered surplusage and every word, if possible, is given effect. *Donaldson v. State*, 93 Wis. 2d 306, 315–16, 286 N.W.2d 817 (1980). The Estate's interpretation that the "costs of . . . litigation" includes actual attorney fees fails in this regard, as it would render the "attorney fees" language in WIS. STAT. § 895.466(3m)(b) surplusage. Those who bring claims implicating subsec. (3m)(b) already may receive the "costs of . . . litigation" pursuant to subsec. (3)(b). Those who bring claims under subsec. (3m)(b) may receive attorney fees in addition to the litigation costs pursuant to subsec. (3)(b)—not in place of them. It would be superfluous to say that all claimants may receive attorney fees as part of the costs of litigation, and then specifically provide for their recovery in a few limited cases as well.

¶ 28. The Estate argues that *Stathus v. Horst*, 2003 WI App 28, 260 Wis. 2d 166, 659 N.W.2d 165, is controlling, asserting that case addressed this issue through the language in WIS. STAT. § 895.80(3) (1999–2000), the predecessor statute to WIS. STAT. § 895.446(3). WISCONSIN STAT. § 895.80 (1999–2000), was a general statute on civil liability for property damage or loss. It provided: "1. If the plaintiff prevails in a civil action under sub. (1), he or she may recover all of the following: (a) Treble damages; (b) All *costs of* investigation and *litigation* that were reasonably in-

curred." Section 895.80(3) (1999–2000) (emphasis added). We disagree with the Estate's reliance on *Stathus*.

¶ 29. First, *Stathus* did not directly address the question of whether attorney fees were to be awarded under Wis. Stat. § 895.80(3) (1999–2000); the decision focused instead on how attorney fees should be calculated if awarded. *Stathus*, 260 Wis. 2d 166, ¶ 12. In addition, the predecessor to the statute at issue here, considered by the court in *Stathus*, did not contain the separate subsections as to damages that now exist in Wis. Stat. § 895.446(3) and 895.446(3m), with the specific allowance of attorney fees for the subset of subsec. (3) claims that also fall under subsec. (3m). Subsequent to the version of the statute considered in *Stathus*, the legislature not only renumbered § 895.80, it also amended it substantially. Wisconsin appellate courts have not addressed whether, following the amendment to § 895.446(3) and the creation of § 895.446(3m), the legislature intended that attorney fees be awarded only for claims implicating subsec. (3m)(b) but not claims generally brought under § 895.446 for which successful claimants receive the benefits accorded in subsec. (3)(b). We do not view *Stathus* as applicable to this case.

¶ 30. Storey argues that when the legislature creates civil causes of action under which attorney fees are permitted, it specifically provides for their recovery, and she cites numerous other statutes as examples. *See, e.g.,* Wis. Stat. § 943.51 (retail theft); Wis. Stat. § 943.212 (fraud on hotel or restaurant keeper, recreational attraction, taxicab operator, or gas station); Wis. Stat. § 134.93 (payment of commissions to independent sales representatives). We agree with Storey that, had the legislature intended attorney fees

689

to be available to a prevailing plaintiff under WIS. STAT. § 895.446(3)(b), it would have used that specific language, just as it did in other statutes and under subsec. (3m)(b). For those reasons, we reverse the award of attorney fees in this case.

## V. Award of double costs pursuant to WIS. STAT. § 807.01(3)

¶ 31. Before trial, the Estate made a $7,500 settlement offer to Storey pursuant to WIS. STAT. § 807.01. Storey did not accept that offer. Because the jury awarded the Estate $10,000, an amount greater than the statutory offer, the circuit court awarded the Estate double statutory costs pursuant to § 807.01(3). However, we have already determined that the jury verdict for compensatory damages should have been reduced to the $5,000 statutory limit for tort actions under WIS. STAT. § 799.01(1)(cr). See supra ¶¶ 19–21. The Estate fails to respond to Storey's argument that "in the event this Court determines that the jury verdict must be reduced to the $5,000 statutory limit under WIS. STAT. § 799.01(1)(cr), then the award of double costs must also be reversed." We therefore need not resolve the issue, because we deem it conceded for purposes of this case. See Charolais Breeding Ranches, 90 Wis. 2d at 109. Since the $5,000 limit is less than the statutory offer, the award of double costs is also reversed.

## VI. Storey's handwriting expert

¶ 32. At the final pretrial conference, the circuit court granted the Estate's motion in limine to prevent any testimony from reaching the jury regarding Billy

Whalen and his role in writing or endorsing the checks at issue. Whalen was a known associate of Storey at the time Storey was caring for Stanley. Whalen was not a defendant in the action, and neither party could determine his whereabouts at the time of the lawsuit and trial. As a result, his handwriting could not be tested, thus necessitating the order in limine.

¶ 33. Forensic document examiner and handwriting expert Curt Baggett testified at trial. There was no objection to Baggett's qualifications as a handwriting expert. Baggett gave testimony as to the handwriting on the personal checks written from Stanley's checking account at Banner Bank. The parties stipulated as to which of the checks in evidence Baggett believed were not endorsed by Storey. Baggett testified that none of the handwriting on eleven of the checks at issue bearing Storey's name was that of Storey. The Estate concedes Baggett was qualified to give that testimony.

¶ 34. The Estate contended a portion of Baggett's testimony extended beyond the stipulation regarding the eleven checks. Prior to the stipulation, Baggett identified three handwriting samples he had reviewed, for three individuals. Baggett then began to testify that the suspect checks were actually written and endorsed by a "third person's handwriting that . . . [he] was given, there were a lot of checks made out to that individual and signed on the back by that individual." Then the following exchange occurred:

[BAGGETT]: The—the handwriting—I was given three assignments. One, to determine the handwriting of Diane Storey and if they matched the 11 checks and then I was given two additional samples of handwriting, a guy named Billy and a girl named Genny who is I guess Miss Genny here—

691

MR. SWID: Objection.

THE COURT: That's sustained.

MR. SCHMIDT: Don't mention names.

[BAGGETT]: To make a determination if indeed either one of those additional people had written the checks and are [sic] forged Diane Storey's name, and it wasn't you, young lady, but it was the other person's handwriting that I had. So to answer your question, the handwriting on this matches the handwriting of the third subject of which I examined.

¶ 35. At that point, the circuit court held a discussion with counsel after the jury had been excused from the courtroom. The "third party" in Baggett's testimony was Billy Whalen, who was the subject of the order in limine prior to the trial. Baggett based his opinion on other checks that were written out to "Billy Whalen" and then endorsed by "Billy Whalen." The court ruled that since Baggett had no known sample of Whalen's handwriting, there was a lack of foundation for Baggett to testify that Whalen wrote and endorsed these checks written out to him.

¶ 36. Storey argues the circuit court erred in ordering that limitation on Baggett's testimony. The decision to admit or exclude evidence is a matter of circuit court discretion. *Weborg*, 341 Wis. 2d 668, ¶ 41. We do not disturb the circuit court's discretionary decision unless the court erroneously exercised that discretion. *Id.* The question on our review is not whether this court would have admitted the evidence, but whether the circuit court properly exercised its discretion in accord with the proper legal standards and facts of record. *See State v. Pharr*, 115 Wis. 2d 334, 342, 340 N.W.2d 498 (1983).

¶ 37. The Estate objected to Baggett's testimony that the checks in question were written by a particular person other than Storey. The circuit court sustained the Estate's objection precluding Baggett from offering his opinion as to whether some other named individual wrote these checks. The court reasoned that Baggett did not have a large enough handwriting exemplar to have sufficient foundation for such an opinion. Particularly, Baggett did not have a known writing sample from Whalen.

¶ 38. We accept the circuit court's ruling on the objection to testimony about checks being written by some named person as a proper exercise of discretion. The circuit court had a reasonable basis to reach its determination that the samples Baggett used were insufficient to establish a proper foundation for his opinion. Namely, Baggett was unable to authenticate the handwriting sample he was using as coming from Whalen himself.

¶ 39. The record establishes the circuit court did not, however, limit Baggett's testimony that checks were written by some unnamed third party, and not Storey. In fact, Baggett testified as follows:

> [BAGGETT]: To make a determination if indeed either one of those additional people had written the checks and are [sic] forged Diane Storey's name, and it wasn't you, young lady, but it was the other person's handwriting that I had. So to answer your question, the handwriting on this matches the handwriting of the third subject of which I examined.

The above testimony was not objected to or stricken. The circuit court properly exercised its discretion in

693

allowing testimony that checks were written by some unnamed third party, not Storey.

*VII. Restitution ruling by the court*

¶ 40. During the motion hearing after the verdict, the Estate requested, and the circuit court ordered, that the judgment be deemed the same as restitution pursuant to WIS. STAT. § 895.446(4). Storey asserts the purpose of that order was so that the judgment would be deemed nondischargeable in bankruptcy, and she argues that was inappropriate. State courts do not determine dischargeability under federal bankruptcy laws. *Lyman v. Lyman*, 184 Wis. 2d 124, 137–38, 516 N.W.2d 767 (Ct. App. 1994). However, the circuit court did not mention bankruptcy dischargeability as the reason it deemed the judgment restitution.

¶ 41. WISCONSIN STAT. § 895.446(4) provides that: "Any recovery under this section shall be reduced by the amount recovered as restitution under ss. 800.093 and 973.20 and ch. 938 for the same act or as recompense under s. 969.13(5)(a) for the same act." The referenced statutory sections—*i.e.*, 800.093, 973.20, 969.13(5)(a)—and chapter 938 all involve restitution orders in criminal or juvenile matters. The wording of § 895.446(4) that "[a]ny recovery under this section shall be reduced by the amount recovered as restitution under" those statutes clearly means reduction from recovery under an existing restitution order as a result of a criminal or juvenile proceeding. It does not provide that a circuit court may consider a civil judgment under that statute to be deemed restitution, nor that a civil judgment under that statute is to

be reduced by potential recoveries from a future criminal or juvenile restitution order. Here, the record does not disclose any other basis to order the judgment be deemed restitution, nor does it reflect any recovery under any existing criminal restitution order that may reduce the civil judgment in this matter. Therefore, that part of the judgment is also reversed.

¶ 42. On remand, the circuit court shall amend the judgment to $5,000 plus statutory costs of $814.95.

*By the Court.*—Judgment reversed and cause remanded with directions.